## Folmar s Appeal.

1. The probate of a will is primâ facie sufficient evidence of due execution; if there has been no contest for more than twenty-one years, a title being founded on it in the mean time, nothing less than clear and satisfactory evidence of a strong character will rebut the primâ facie effect of the probate.

2. The 7th section of Act of 22d April 1856, making a probate conclusive as to real estate unless contested within five years, is retrospective.

3. The act makes no exception as to minors or femes covert, and the probate of a will is conclusive on *all* persons.

4. Kenyon *v.* Stewart, 8 Wright 180, Warfield *v.* Fox, 3 P. F. Smith 382, recognised.

May 9th 1871.   Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Orphans' Court of *Somerset county* : Of May Term 1871, No. 105.   In the distribution of the estate of Theobald Folmar, deceased.

The decedent died shortly after the 9th of March 1847, having on that day made his will, by which he gave one-half of his estate, real and personal, to his wife Sarah, and the other half to his daughter Matilda, his real estate to be sold when his wife should direct, as specified in the will.   He appointed Peter Levy executor, with power to sell and convey his real estate.

The execution of the will was as follows:—

" In witness whereof, I, Theobald Folmar, the testator, have to this my last will and testament, set my hand and seal, this the ninth day of March, A. D. one thousand eight hundred and forty-seven.                                                        his

THEOBALD ✕ FOLMAR, [L. S.]
                                       mark.

Signed, sealed, &c., published and declared by the testator, Theobald Folmar, as and for his last will and testament, in the presence of us, who at his request and in his presence have subscribed our names as witnesses thereunto.

MATHIAS ANSTADT, STEPHEN YODER."

The probate was as follows :—

" Somerset County, ss.

On the 16th day of March, A. D. 1847, personally appeared before me, Wm. H. Picking, Register, for the probate of wills and granting letters of administration, in and for the county of Somerset, Mathias Anstadt and Stephen Yoder, the subscribing witnesses to the within instrument of writing, who being qualified according to law, do depose and say that they were present and saw and heard the within-named testator, Theobald Folmar, sign, seal, publish, pronounce and declare this instrument of writing,

as and for his last will and testament, and at the time of so doing he was of sound mind, memory and understanding, to the best of their knowledge, observation and belief.

Affirmed, sworn and subscribed, same day before me.

Wm. H. Picking, Register.

Stephen Yoder,
Mathias Anstadt."

The same day letters testamentary were issued to Peter Levy.

The testator left a widow, Sarah Folmar, and a daughter who afterwards married and died December 20th 1866, leaving a minor child Rebecca A. Griffith.

The account of the executor showed a balance of $22.51 of personal estate. He sold the real estate in 1869, and filed his account August 4th 1869, showing a balance of $1990 in his hands.

J. D. Kimmel, Esq., was appointed auditor to distribute the fund.

The question raised before the auditor was whether the will was duly executed in accordance with the requirements of the 6th sect. of Act of April 8th 1833, Pamph. L. 249, Purd. 1016, pl. 6.

Peter Levy, Esq., was examined before the auditor and testified: "I wrote that will. I wrote the will at the request of Mr. Folmar, and at his dictation. I am satisfied in my mind that I wrote the will as he ordered me. I am satisfied in my mind that I made known to testator the contents of the will, because it is my rule to do so in all cases, to read and explain before signing. I cannot recollect any particular words that he said, but I am satisfied in my mind that I wrote his name to the will by his direction and request. I am satisfied in my mind that I would not have written his name to the will unless directed by him to do so. Testator was at the time sick in bed; appeared to be weak but of sound mind. Not certain if he was physically able to write his name or not. He died in a few days after the will was written. Mathias Anstadt and Stephen Yoder were called as witnesses. The signing of the will was done in the presence of the witnesses and acknowledged before them. Anstadt and Yoder the witnesses are both dead. I was present when the will was admitted to probate, Anstadt and Yoder were present as witnesses in the register's office—think they were sworn as witnesses to the will. I saw Anstadt and Yoder, the witnesses, sign their names to the will. I do not recollect any particular words, but I am satisfied that the testator directed me to write his name to the will, as I have always been very particular in executing wills. I do not recollect anything said by him particularly, but am satisfied that I would not have done so unless requested—it was not my custom to write a man's name, unless specially requested. Anstadt died soon after Folmar. Yoder died ten or twelve years ago."

There was evidence that at the execution of the will the tes-

tator was very sick and from stiffness of his arm was unable to write; but there was no evidence that he requested any one to sign his name.

The auditor reported : " That the evidence of the execution of the will is entirely too vague and inexplicit, and wants the essential requisites necessary to constitute it a will, to wit : 'The express direction to another to sign his name to the will,' as required by the statute of 1833, and the decisions thereon.   He therefore decides that the paper purporting to be the last will and testament of Theobald Folmar, deceased, is not a will.

" The funds arising out of the personal estate are insufficient to pay the expenses of this audit ; he therefore makes no distribution."

The report, after exceptions, was confirmed by the Orphans' Court. Sarah Folmar, the widow, appealed to the Supreme Court and assigned the decree of confirmation for error.

*A. H. Coffroth*, for appellant.—The parties are estopped from this inquiry at this late day : Act of 22d April 1856, § 7, Pamph. L. 533, Purdon 275, pl. 13 ; Kenyon *v.* Stewart, 8 Wright 189. The will is good under the Act of 1833.   Both of the subscribing witnesses are dead : Greenough *v.* Greenough, 1 Jones 489 ; Hands *v.* James, 2 Comyn 531 ; Provis *v.* Reed, 5 Bingh. 435 ; Croft *v.* Pawlet, 2 Stra. 1109 ; Dayrell *v.* Glasscock, Skin. 413 ; Turnipseed *v.* Hawkins, 1 McCord 272 ; Brice *v.* Smith, Willes 1 ; Fetherly *v.* Waggoner, 11 Wend. 599 ; Fitzherbert *v.* Fitzherbert, 4 B. C. C. 231.

*W. H. Postlethwaite*, for appellee, referred to the Act of 1833 ; Greenough *v.* Greenough, 1 Jones 489 ; Shinkle *v.* Crock, 5 Harris 162 ; Ruoff's Appeal, 2 Casey 220 ; Blocher *v.* Hostetter, 2 Grant 289.

The opinion of the court was delivered, May 18th 1871, by

AGNEW, J.—Theobald Folmar made his will on the 9th of March 1847, and probate thereof was made before the register of wills of Somerset county on the 16th of March 1847, the subscribing witnesses (who are now both dead) testifying " that they were present and saw and heard the within-named testator, Theobald Folmar, sign, seal, publish, pronounce and declare this instrument of writing as and for his last will and testament."   This probate remained uncontested until the year 1869, the executor having in the mean time sold the real estate of the testator under a power contained in the will, settled an account and charged himself with the proceeds of sale.   The distribution of the proceeds was referred to an auditor, and before this auditor the will was impugned as imperfectly executed, so held to be by him, and his report confirmed by the court.   We think this was an error.

[Folmar's Appeal.]

After a probate of a will, which is primâ facie sufficient evidence of the due execution of it even as to real estate, and no contest has taken place upon it for more than twenty-one years, and a title founded upon it in the mean time, nothing less than clear and satisfactory evidence of a strong character should be permitted to rebut the *prima facie* effect of the probate. Clearly there was nothing in the testimony of Peter Levy so clear and satisfactory as to rebut the strong presumption in favor of the will. But this question becomes of no importance under the provisions of the 7th section of the Act of 22d April 1856, declaring that the probate shall be *conclusive* as to real estate unless *within five years* from the date of such probate those interested to controvert it, shall, by *caveat and action at law duly pursued*, contest the validity of such will as to such realty. The proviso to this section gave to persons who would be sooner barred by the act, two years after its date to make the contest.

That this act is retrospective is decided in Kenyon *v.* Stewart, 8 Wright 180. See also Maul *v.* Rider, 1 P. F. Smith 384–5. It is true that Woodward, J., remarks in the opinion that if the party to be affected be not of full age an embarrassing question might arise, such as was discussed in Miller *v.* Franciscus, 4 Wright 339, alluding to the application of the exceptions contained in the General Limitation Act of 1785, § 3, to the Act of 1856. But in the later case of Warfield *v.* Fox, 3 P. F. Smith 382, where the question directly arose, it was held that the Act of 1856 makes no exception in favor of *minors* and *femes covert*, and that the exceptions in the Act of 1785 could not be applied. " We hold, therefore (said Strong, J.), that the probate by the register of the proper county of any will devising real estate is conclusive upon all persons, whether infants, *femes covert, non compotes mentis* or not, unless within five years from the date of such probate the validity of the will shall be contested in the manner pointed out by the 7th section of the Act of 1856."

    The decree of the court below is therefore reversed, and the record is order to be remitted, with an order to proceed to make distribution of the fund in question to the persons entitled to the same under the will of Theobald Folmar, deceased, the costs of the proceedings and of this appeal to be paid out of the estate.