## Commonwealth *ex rel.* Winpenny *versus* Bunn.

1. A register cannot at discretion dispose of *every* matter arising in the performance of his functions, if objected to by a competent party.

2. Under the 25th sect. of Act of March 15th 1832, where objections are made to probate of a will, and no precept directed to the Common Pleas, or to granting administration, or a question of kindred or "other disputable or difficult matter comes into controversy," the register at the request of a person interested *shall* proceed no further but call a Register's Court.

3. Sect. 13 of same act is designed for a caveat, and where a question of fact arises, the register has a discretion as to directing a precept for an issue to the Common Pleas.

4. The duty of the register under the 25th section is enforceable by mandamus.

5. Where there is nothing "disputable or difficult," the court would not interfere upon the refusal of the register.

6. On a question before the register as to the signature to a will, papers in the possession of the executor offering the will were called for and refused; the register not having power to compel the production, the party opposing the will asked him to appoint a Register's Court. *Held*, that this was a "disputable and difficult matter," the register was bound to appoint a Register's Court, and on refusal was compellable by mandamus.

7. In such matter the act of the register was ministerial: mandamus lies to enforce ministerial acts although to be performed by a judicial officer.

8. A register has no power to compel the attendance of witnesses other than those capable of proving the will: or to compel the production of any paper except the will itself.

9. The acts of a register are judicial where without objections probate of a will has been made or administration granted: these cannot be impeached collaterally; the remedy is by appeal.

10. Cozzens's Will, 11 P. F. Smith 196, adopted.

March — 1872. Before THOMPSON, C. J., SHARSWOOD and WILLIAMS, JJ. AGNEW, J., at Nisi Prius.

[Commonwealth *v.* Bunn.]

Mandamus of January Term 1871, at the relation of Joseph Winpenny against William M. Bunn, register of wills, &c., of Philadelphia.

The alternative writ of mandamus was as follows :—

"Whereas, it has been suggested to us that Joseph Winpenny, petitioner, is a brother of A. Jackson Winpenny, deceased, who died on or about the 12th day of November, A. D. 1870; the said Joseph Winpenny, upon the 17th day of November, A. D. 1870, filed a caveat in the office of the register, &c., against the admission to probate of any alleged will of the said A. Jackson Winpenny, deceased; that upon the 3d day of January, A. D. 1871, a paper writing purporting to be the last will of said decedent, was offered for probate before William M. Bunn, Esq., the said register of wills, by J. Bolton Winpenny, one of the persons named in said paper writing as executor thereof; that objections have been made before the said William M. Bunn, register of wills as aforesaid, by the said Joseph Winpenny, petitioner, against the probate of said paper writing; that thereupon proceedings took place before said register, in reference to the probate of said paper writing; that the said J. Bolton Winpenny, through his counsel, Mr. Dolman, produced before the register the three subscribing witnesses to said paper writing, and that said subscribing witnesses or any of them failed to prove the due and legal execution of said paper writing as the last will of said decedent; that failing to make said proof by the said subscribing witnesses, Mr. Dolman called the said J. Bolton Winpenny as a witness to prove the execution of said paper writing as the last will of said decedent; that witnesses were then called by Mr. Dolman to prove the genuineness of the signature of the decedent to said paper writing; that Charles W. Otto, one of said witnesses, called on behalf of the said J. Bolton Winpenny, produced, upon his examination before the register, a certain check upon which a signature was written, and by means of which the said witness testified as to the manner in which the decedent spelled his name; that Thomas R. Garsed and James E. Mitchell, the other two of said last-mentioned witnesses, testified as to the genuineness of the signature of decedent to said paper writing, and both stated, in their testimony, that the said J. Bolton Winpenny had shown them a short time previously a check upon which the name of A. Jackson Winpenny was written, and the said Thomas R. Garsed stated in his testimony that the said J. Bolton Winpenny had asked him if he could recognise said signature; that the said Joseph Winpenny, petitioner, had every reason to believe that the said paper writing is not the last will of said decedent, and that it was never signed by said decedent; that upon the 30th day of January, A. D. 1871, the said Joseph Winpenny, through his counsel, made a demand upon the counsel of said J. Bolton Winpenny, for the production of certain checks

[Commonwealth *v.* Bunn.]

and an alleged deed upon which the signature of decedent was written; that the said checks included, *inter alia*, the checks referred to or used by the said witnesses on behalf of the said J. Bolton Winpenny, and are material to the determination of the said matter in controversy; that upon the 1st day of February, A. D. 1871, before the said William M. Bunn, register of wills as aforesaid, the said Joseph Winpenny, petitioner, made a further demand for the production of said checks and alleged deed, upon the said J. Bolton Winpenny and his counsel, then and there present; that both of said demands were refused, and the said J. Bolton Winpenny, through his counsel, refused to produce the said checks and alleged deed; that the said register of wills has no power or authority by law to compel the production of said checks, or alleged deed, nor to compel the attendance of witnesses other than the subscribing witnesses, to a will; that the said Joseph Winpenny, petitioner, being aware that he had no remedy to compel the production of said checks and alleged deed before the said William M. Bunn, register of wills as aforesaid, did, immediately upon the refusal of the said J. Bolton Winpenny to produce said checks and alleged deed, make a request to the said William M. Bunn, register of wills, that he should appoint a Register's Court for the decision of the said matter in controversy, to wit, the production of the said checks and alleged deed, &c.; that the said request was made under the 25th section of the Act of Assembly of March 15th 1832, relating to Register's Courts, to wit:

" ' Where objections are made, or a caveat is entered against the probate of any last will and testament, and no precept for an issue is directed by the register into the Common Pleas as aforesaid, or where objections are made to the granting of letters of administration to any person applying therefor, or where any question of kindred or other disputable and difficult matter comes into controversy before any register, he shall, at the request of any person interested, appoint a Register's Court for the decision thereof, to be held at a time certain, and as soon as convenient, at the courthouse or other public place in the respective county, giving convenient notice of the time and place of holding the same, by citation or otherwise, to all concerned, as well to the persons interested as to the judges whose assistance he shall require, and in the meantime he shall do and receive all proper acts preparatory to the business of such court.'

"That the said Joseph Winpenny, petitioner, has no legal or other remedy to compel the production before the register of said checks and alleged deed, except by the appointment of a Register's Court in pursuance of said section of the Act of Assembly above recited; that the said William M. Bunn, register of wills, has refused the request of said Joseph Winpenny, petitioner, for the appointment of a Register's Court for the decision of the said

[Commonwealth *v.* Bunn.]

matter in controversy; that the said Joseph Winpenny, petitioner, is entirely without remedy in the premises, unless it be afforded by the interposition of this court, by their writ of mandamus," &c.

The writ was returnable March 4th 1871.

The answer of the register was:—

"This respondent, not admitting it to be true as in said petitioner's petition is alleged, that the subscribing witnesses to the paper writing alleged to be the last will and testament of A. Jackson Winpenny, deceased, or any of them, failed to prove the due and legal execution of said paper, as the last will of said decedent, and as to which the said register has reserved his opinion; and also averring that the said Joseph Winpenny neither produced nor offered any evidence against the said alleged will, respectfully suggests and submits to the court that the act of this respondent complained of by the said Joseph Winpenny in his said petition, is a *judicial act*, and the law provides an ample remedy for any error committed by this respondent in any judicial act; to wit, an appeal to the Register's Court."

*J. H. Campbell* (with whom were *C. T. Bonsall* and *J. J. Lewis*), for the relator.—There was no question of *fact* before the register so as to give him discretion under Act of March 15th 1832, sect. 13, Pamph. L. 138; 1 Br. Purd. 406, pl. 8; Cozzens's Will, 11 P. F. Smith 196; Wikoff's Appeal, 3 Harris 289; Baxter's Appeal, 1 Brewster's R. 459; Graham's Appeal, 11 P. F. Smith 43. The refusal of the respondent to appoint a Register's Court is not a *judicial act* but a *ministerial* one: Hood on Executors 38; Sect. 5, Act of March 15th 1832, sect. 25, Pamph. L. 136; 2 Br. Purd. 1255, pl. 20; Cozzens's Will, 11 P. F. Smith 196. The ordinary meaning of the language must be presumed to be intended, unless it would manifestly defeat the object of the provisions: Minor *v.* Mechanics' Bank, 1 Peters (S. C.) 64; Dwarris on Statutes 712; Davison *v.* Gill, 1 East 64; Supervisors *v.* United States, 4 Wall. (S. C.) 447; City of Galena *v.* Amy, 5 Id. (S. C.) 709. A writ of mandamus will lie to compel the performance of a ministerial act by a public officer: Tapping on Mandamus 64; Moses on Mandamus 49; Commonwealth *v.* Commissioners of Allegheny, 1 Wright 279. When there is a right, and the law has established no specific remedy, this writ should not be denied: St. Luke's Church *v.* Slack, 7 Cushing 226; Moses on Mandamus 18, 42, 48, 49; Tapping on Mandamus 71; Griffith *v.* Cochran, 5 Binn. 103; Delaney *v.* Goddin, 12 Gratt. 266; Illinois Central Railroad, 44 Ill. 353; Commonwealth *v.* Justices of Hampden, 2 Pick. 414.

*J. Dolman* and *G. L. Crawford* (with whom was *B. H. Brewster*), for respondent, cited Heron's Estate, 6 Phila. R. 86.

[Commonwealth v. Bunn.]

The opinion of the court was delivered, March 17th 1872, by

THOMPSON, C. J.—Every register has, within his county, juris-diction of the probate of wills, and of granting letters testamentary and of administration, but he has not the power at discretion of disposing of every matter which may arise in the performance of his functions, if objected to by a competent party. The 25th section of the Act of March 15th 1832 plainly shows this. It says: "Where objections are made, or a caveat is entered against the probate of any last will and testament, and no precept for an issue is directed by the register into the Common Pleas as afore-said (sect. 13), or where objections are made to the granting of letters of administration to any person applying therefor, or where *any* question of kindred or other disputable and difficult matter comes into controversy before any register, he *shall*, at the request of any person interested, appoint a Register's Court for the decision thereof, to be held at a time certain, and as soon as convenient," &c.

These are plain words, and are imperative beyond a doubt, in any of the contingencies mentioned in the section, that the register *shall* proceed no farther himself but call a Register's Court. The only serious argument against this construction, it was thought, arose out of the 13th section of the same act, which provides that "whenever a caveat shall be entered against the admission of any testamentary writing to probate, and the person entering the same shall allege as the ground thereof, any matter of fact touching the validity of such writing, *it shall be lawful* for the register, at the request of any person interested, to issue a precept to the Court of Common Pleas of the respective county, directing an issue to be formed upon the said facts, and also upon such others as may be lawfully objected to. the said writing," &c. In several cases in this court the action of the register has, under this section, been held to be discretionary as to issuing the precept to the Common Pleas for the trial of facts alleged in the caveat as objections to the probate of a will: Wikoff's Appeal, 3 Harris 281; Cozzens's Will, 11 P. F. Smith 196. The words in the section "*that it shall be lawful* for the register, at the request of any person interested, to issue" the precept to the Common Pleas, clearly imply a discretion. Not so the 25th section. The words there used are as clearly imperative. They are, the register "*shall, at the request of any person interested,* appoint a Register's Court," on the happening of any of the contingencies mentioned in it. That one of these sec-tions should imply a discretion in the register, and the other not, is to be ascribed to the widely different purposes of the sections. A careful reading of them will very plainly show this. The 13th section has no reference to the Register's Court at all. It enables the register to ignore it, and apply directly to the Common Pleas for the determination of the disputed facts alleged as the grounds

of the caveat; and thus have the facts established by the trial had there, says the section, "and when certified to the register as aforesaid, shall not be re-examined by the said register, nor upon any appeal from his decision." The 13th section is alone designed for a proceeding under a caveat, and request for an issue to the Common Pleas. This the register may grant or not, at his discretion. But if he refuses, what then? Is he to go on and try questions of law and fact himself, if objected to by the parties in interest? By no means. As he is not required to be learned in the law, the act wisely provides that any party interested shall, "where any question of kindred or other disputable and difficult matter comes into controversy," either on a caveat to the probate of a will where no issue has been directed by the register as provided in the 13th section to the probate of a will, or in granting letters of administration, have the advantage of law-judges to determine such "disputable and difficult matters" by making a request for the same. In which case the section says, "the register shall appoint a Register's Court to be held at a time certain, and as soon as convenient." The court thus constituted of the register and any two of the judges of the Common Pleas, may dispose of all disputed facts, or at their discretion direct issues of fact necessary to the determination of the controversy to the Court of Common Pleas; and thus the party will have the advantage of law-judges to hear his case.

This is simple, and need not occasion delay, a remark that has been made with force of the 13th section, and against the idea that its directions were imperative. But under the 25th section a delay of over three or four weeks at most need not occur, as incident to the call of a Register's Court. This delay is altogether easier to be endured than the grant of letters by the register to objectionable parties, or the probate of a will in the face of "disputable or difficult matters," only to be reversed on appeal to the Register's Court. It seems to me the line of action under these two sections is so distinct that the necessary interpretation of either is no precedent for a like construction of the other.

Now, it is not at all intended to be asserted that the register must call a Register's Court without being presented with a statement of disputed facts, "disputable and difficult matters," as the act says. Where that is done, the register is bound to send the case to the Register's Court: Cozzens's Will, 11 P. F. Smith, 196. This is the only clause in the 25th section which can be said to imply a discretion on his part; but where the matter is plainly disputable, his discretion ceases and his ministerial duty begins; that duty is enforceable by mandamus. Where there is nothing disputable and difficult we would not interfere on account of the refusal of the register to call a Register's Court.

In the case in hand, the suggestion copied into the alternative

[Commonwealth v. Bunn.]

mandamus, shows that a caveat had been filed at the instance of the relator against the probate of the will of A. Jackson Winpenny. No issue was directed upon it, as might have been done under the 13th section of the Act of 1832. The caveat itself is not on the paper-books, and what were its grounds, we do not know. But the register proceeded to take probate of the will, and the relator sets forth that neither of the subscribing witnesses proved its execution by the testator; whereupon counsel for the will called other witnesses to prove the genuineness of the testator's signature. Among them was Charles W. Otto, who, on his examination, produced before the register a certain check upon which was a signature of the testator, and "by means of which," says the suggestion, "the witness testified as to the manner in which the decedent spelled his name." Two other witnesses testified to the genuineness of the signature of the decedent to the writing purporting to be his will, but stated that J. Bolton Winpenny, who offered the will for probate, had exhibited to each of them a check upon which the testator's name purported to have been written, and asked them if they could recognise the testator's signature to the will; that the contestant of the will of the testator demanded of the counsel of J. Bolton Winpenny, the production of the check or checks used by his witnesses, and which he alleges was material to him in the matter in controversy; and also for the production of an alleged deed of the testator, in his, the said J. Bolton Winpenny's, possession, which he through his counsel refused to produce, as well as said checks, and which also he alleges to be material in the determination of his case. Upon this refusal, the relator avers that inasmuch as the register has no general power to enforce the attendance of witnesses, or the production of papers, excepting wills, and the subscribing witnesses thereto, he applied to the register to convene a Register's Court for the determination of the matters in dispute arising on the question of the probate of the said will. This request, it seems, the register declined to comply with.

The answer of the respondent, the register, to the alternative mandamus, is simply that whether he is to call a Register's Court or not, is a judicial duty and act, and cannot be coerced by mandamus; and that the only remedy of the relator is by appeal when he shall have decided the question before him, which he still reserves for a future opinion upon.

We have decided the point already against this position on what has been said above on the 25th section of the act. When a sufficient case has been shown, we have said that the register is bound to call a Register's Court, and so says the case of Cozzens's Will, *supra*. Of course, at that point, the acts of the register are no longer judicial, they necessarily become ministerial. Mandamus lies not to enforce judicial action, it is admitted, but does

to enforce ministerial duties, even when they are to be performed by judicial officers: Commonwealth *ex rel.* Griffith *v.* Cochran, Sec'y of the Land Office, 5 Binn. 87; Commonwealth *v.* The Commissioners of Allegheny County, 1 Wright 279. This writ lies to compel the performance of a ministerial act by a public officer: Tap. on Man., Am. ed. 1853, pp. 65, 67; Moses on Mand. p. 49. This point need not be further discussed, the principle is elementary.

Did the relator present to the register on requesting a Register's Court to be called in relation to the probate of the will in question, such a case as entitled him to have his request granted? We are of opinion he did. We discover no power in the register to subpœna and compel the attendance of witnesses other than the subscribing witnesses to, or witnesses alleged to be capable of proving a will, or to enforce the production of any paper, saving and excepting the testamentary writing itself. That power is expressly given by the 8th section of the Act of 1832, and by the 9th section of the act, the register is also authorized to issue commissions to take the depositions of witnesses on interrogatories filed in his office, in other counties or states, or in foreign countries. This is all the power on the subject of testimony given to the register by the act. This being so, the register could not compel the production of the checks used by the witnesses for the will, and from which it would seem, comparisons were drawn, with the signatures to the will, and which J. Bolton Winpenny refused to produce, to be used by the relator. It is, therefore, very probable, that he could not meet the evidence of these witnesses without the production of these papers, and their production could only be certainly secured in a Register's Court.

In nothing said herein do we mean to say that the acts of the register are in no case judicial. They are always so, where, without any objections probate has been made of a will, or upon granting letters of administration. There the redress is by appeal. These acts cannot be impeached collaterally.

There is a decision of the Register's Court, in 6th Philadelphia Reports, p. 86, Alex. Herron's Estate, which refers to the 25th and 41st sections of the Act of 1832, and seems to hold it discretionary under both sections with the register, under the former section, and the Register's Court under the latter, whether in the one case the register shall call a Register's Court when requested, or the Register's Court shall direct all issues when requested. There is no parity in reason between the two acts. The Register's Court, with judges learned in the law and with all the powers of a court, ought in reason unless expressly limited, to be allowed the discretion of a court in determining upon the necessity of employing auxiliary powers to determine upon ultimate results, especially where both delay and expense are sure to follow its exercise; but

[Commonwealth v. Bunn.]

it is a different case when deficient powers, as well as inadequate qualifications exist; the reason for a different rule is thus apparent, and marks the distinction between the terms used by the legislature in these different categories. It is enough to say here, of the case referred to of Herron's Estate, 6 Phila. Rep. *sup.*, that it arose under a different section of the Act of 1832, (viz. the 41st) from that which gave rise to the application here. That was for an issue from the Register's Court to the Common Pleas; this for a call of the Register's Court only. The Act of 1832 is not of very easy consistent interpretation, but every section was undoubtedly designed to have its peculiar operation in the system provided by it, and must be so construed. The revisers say that it was "compiled from nearly twenty different Acts of Assembly and Statutes," it was therefore doubtless very carefully considered by them, and all its provisions must be construed to give effect to the whole if possible. We are of opinion, after a careful study of the act, that it was the duty of the register in this case to have called a Register's Court for the reasons set forth in the request for it in the case, and in the suggestion filed, and that the answer of the respondent is altogether insufficient in law to answer the suggestion of the relator.

Now, March 11th 1872, after argument by counsel, and consideration of the premises by the court, we are of opinion that judgment be entered herein for the Commonwealth, and that a peremptory mandamus do issue against the said William M. Bunn, register, to proceed forthwith to do the matters and things in the alternative mandamus mentioned, namely, to call a Register's Court for the hearing and determining upon the probate of the will of A. Jackson Winpenny, now pending before him, and he is ordered to pay the costs of this suit.