# Wilson et al. *versus* Gaston et al.

1. The probate of a will by the register is a judicial decree which cannot be impeached collaterally in an action of ejectment brought in the right of the heir-at-law to recover real estate devised by said will.

2. A will can now only be contested in the manner prescribed by the Act of April 22d 1856; that is, "by *caveat* and action at law duly pursued," which restricts the contestant to proceedings in the Registers' Office and an issue *devisavit vel non* directed by the Orphans' Court.

3. The dictum of WOODWARD, J., in Kenyon *v.* Stewart, 8 Wright 179, reviewed and dissented from.

November 20th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

Error to the Court of Common Pleas of *Washington county:* Of October and November Term 1879, No. 84.

Ejectment by Samuel Wilson and others against Alexander Gaston and others, for a tract of seventy-one acres of land.

The facts are sufficiently stated in the opinion of this court.

*D. F. Patterson* and *L. McCarrell,* for plaintiffs in error.—The law as to the conclusiveness of the probate of a will affecting realty as it existed prior to October 1st 1856, was well settled. Successive actions of ejectment, and two concurring verdicts, were conceded, by long established practice in this state, "as the right of every one litigating a claim to an estate in lands, without reference to the peculiar form of his title," whether he claimed by deed, will or otherwise; and regardless of the fact that the will under which he claimed had been found valid on the trial of an issue *devisavit vel .non:* Holliday *v.* Ward, 7 Harris 485, 490, or had been condemned by the register who refused to admit it to probate: Smith *v.* Bonsall, 5 Rawle 80; Rowland *v.* Evans, 6 Barr 435. Was this well-settled and long-recognised right swept away by the seventh section of the Act of April 22d 1856? A similar effect was claimed in Rowland *v.* Evans, *supra,* to have been worked by the seventeenth section of the Act of March 15th 1872; wherein Lowrie, P. J., in the court below, construed a probate, as a judicial decree, conclusive upon the title of real estate unless reversed by appeal directly attacking it. This judgment was reversed by this court, BELL, J., delivering the opinion, in which, inter alia, he said : " The absence of an express declaration to such effect, in the statute itself, is an impressive though silent admonition that no change in principle was intended. The introduction of the principle proposed would be of the gravest importance in its effect upon titles to real estate, derived from testamentary disposition or by descent, and the long-established mode of ascertaining them, by substituting a decree of a subordinate officer, or, at best, the verdict

[Wilson *v.* Gaston.]

of a single jury, for successive actions of ejectment and two concurring verdicts, conceded by the law of this state as the right of every one litigating a claim to an estate in lands, without reference to the peculiar form of his title."

No point presented or question raised, in any case within our knowledge, indicates that any lawyer or judge has regarded the seventh section of the Act 22d April 1856, as in any way impairing this right, which a line of decisions, commencing as early as 1774, established "as the undoubted law of Pennsylvania."

In the face of Rowland *v.* Evans, *supra*, can it be that the legislature intended, by the seventh section of the Act 22d April 1856, to make by implication the very changes which this court had explicitly declared could not be so made ? There is nothing in the act itself to indicate that its authors designed to introduce any new remedy, or to confine any one interested to contest a will to any exclusive remedy. No new remedy was created or existing remedy destroyed by any section of the act, except the ninth section, and it exhibits the pains taken by the authors of the act to set forth fully, clearly and in detail, the changes intended to be made. They were preparing a law "for the greater certainty of title and more secure enjoyment of real estate," and, after making several important provisions in which no remedies were changed but only the time of their application limited, they came to the subject of the probate of wills; they considered that an unrevoked probate was conclusive as to a bequest of personalty, whereas, with respect to realty, there was no limit to the time within which a person disposed to litigation might unsettle the title or disturb the enjoyment of the devisee. Here was a mischief similar in character to those provided against in former sections, and a similar remedy was demanded, viz.: not the destruction of existing forms of procedure and the creation of new ones, but the limitation within a definite period of the application of existing remedies.

In Kenyon *v.* Stewart, 8 Wright 179, WOODWARD J., referring to the section in controversy, says : " The main purpose of this section was to give the probate of wills, after five years, the same conclusive effect as to real estate, which it has always possessed in England and here, as to personal goods. Though held to be prima facie evidence of title, the probate with us has been open to contest indefinitely, or at least for any time short of the period at which the common law would set up a conclusive presumption in its favor. This was the mischief the statute was intended to remedy. Innumerable titles throughout the state depended, and always will depend, on the probate of wills. That probate, the foundation of so many titles, we treat as a judicial decree, and the legislature here thought there ought to be a time when it should be no longer questionable. * * * It plainly declares that the uncontested probate shall be conclusive after five years from its date." The court

[Wilson v. Gaston.]

then proceeds to say that the word "caveat" in the section is inaccurately used, "but the other words, 'action at law,' are sensible and mean an ejectment, as in this case, or any proceeding where the issue is *devisavit vel non.*

The contest over Rachel Dougherty's will is found in Vernon *v.* Kirk, 6 Casey 218, and Kirk *v.* Carr, 4 P. F. Smith 285. An examination of these two cases reveals the fact that precisely the same questions were tried in the latter, on an ejectment, as had been previously tried in the former, on an issue directed by the register's court; and, further, that the latter action was a second action of ejectment. Here was the case of a probate which was controverted on an issue *devisavit vel non* and in *two actions* of ejectment, and both ejectments must have been tried after 1856. In Kenyon *v.* Stewart, *supra*, Warfield *v.* Fox, 3 P. F. Smith 382; Folmar's Appeal, 18 Id. 482; Stewart *v.* Austin, 9 Phila. 141, the seventh section of the bill was simply treated as a Statute of Limitation. In no case was the section considered as limiting the contest of a probate to one proceeding in the Orphans' Court or to a single action of ejectment. Every case has been ruled upon the question of time and not one upon the failure of the remedy. Our contention, then, is, that actions of ejectment for lands affected by the probate of wills have been tried without question after direct attacks on the probate had failed, and in none of which the probate was held to be conclusive except when it had stood unassailed for the full statutory period; that the rule of evidence making an unassailed probate conclusive *after five years*, has no application to a case where, within five years, a caveat has been filed or appeal from the probate entered or action of ejectment brought, or any recognised mode of contest instituted, having for its object the setting aside of the will, providing such proceeding, whichever it may be, shall have been duly pursued; and that a party who brings his action of ejectment, as heir at law, to recover his share of lands devised to another by will, within five years after the probate of such will, stands on the same footing as to his remedies which a similar character of plaintiff occupied prior to October 1st 1856, and retains unimpared his right to successive actions of ejectment and two concurring verdicts.

*John W. & A. Donnan* and *A. W. & M. C. Acheson*, for defendant in error.—At common law there was no such thing as a probate of a will of real estate. Such will was liable to be disputed whenever and as often as it was set up in any judicial proceeding as evidence of title, and, whether the trial was at law or in chancery, nothing was established except for the purposes of the particular case between the parties litigant. This arose from the fact that the ecclesiastical court had no jurisdiction over a devise of realty. But where the will related to land *and* goods, and so was a mixed will,

11 Norris—14

[Wilson *v.* Gaston.]

the probate was made simply and only that the personal estate might be administered.    Such probate was not allowed to prejudice the heir at law, and it was not evidence at common law in any suit involving the title to the land.

Our Act of 1705 established the office of register general and the appointment of deputies for the several counties with power "to take probate of wills and granting administrations."    Next followed the Act of 1832, directing that the register shall have jurisdiction " of the probate of wills and testaments, of the granting of letters testamentary, and of administration."

Our courts early decided that the jurisdiction of the register under these acts related exclusively to administering the personal estate and did not effect realty or in anywise conclude the rights of the heirs-at-law as respected devised lands, and hence a decree of the register's court after a trial by jury on an issue *devisavit vel non* did not disturb the rights of the heir.    The only effect given to the probate was to make it prima facie evidence, and that of the weakest kind.

So the law stood prior to the Act of 1856, not, however, without persistent effort to change it by judicial interpretation, upon the ground that the register, being a judicial officer, his decrees upon matters within his jurisdiction could not be collaterally impeached : Rowland *v.* Evans, *supra;* Shields's Appeal, 8 Harris 291 ; Asay *v.* Hoover, 5 Barr 31, in which latter case the heir-at-law, claiming that the verdict and judgment against the will in the feigned issue were conclusive, was answered by Bell, J., that the decision of the register refusing the probate of the will, and the verdict of the jury condemning it, were absolute only as to the personal estate, that this had grown to be a settled rule of property, not to be disturbed by judicial interference without danger of disastrous results.    But he adds, "if it be desirable to have it changed, it can only be safely done by legislative interposition, looking to a prospective alteration, without meddling with vested interests acquired and held under a well-ascertained principle of the law of estates."

The relief thus suggested is embraced in the Act of 1856.    The mischief to be remedied was in the clashing of jurisdictions, by which judicial decrees were collaterally overturned and the harmony of the law disturbed.    By one tribunal, to which the probate is exclusively intrusted, the testator is adjudged to have been sane, his will legally executed and free from all fraud : by another tribunal, having no jurisdiction over the probate, the testator is pronounced to have been insane, his will not legally executed or made under undue influence.    Thus on the one hand the law sustained the will and ordered it to be carried into effect, whilst on the other it decreed it to be invalid and set it aside.    The expansion of the register's jurisdiction to realty making the probate as to it

[Wilson v. Gaston.]

equally conclusive as it is to personalty, after five years, brings into exercise the common recognised rule that the judgment of a court of competent jurisdiction cannot be inquired into collaterally. The probate by the register of any will devising real estate shall be conclusive as to such realty, unless within five years from the date of such probate those interested to controvert it shall, by caveat and action at law duly pursued, contest the validity of such will as to such realty. In legal acceptation a caveat antedates the probate, its office being to arrest the proof of the will; but manifestly the word caveat is here used in a different and broader sense. By "caveat" is meant an objection to or a complaint against the probate of the will. By action at law is meant an appeal and issue *devisavit vel non*. By no rule of interpretation can the word "caveat" be eliminated from the act as senseless and devoid of all meaning, because in some cases a "caveat," in the strict sense of the word, will not apply, as where the contest begins after the probate has been made without opposition or notice.

"Caveat and action at law duly pursued," indicate the Orphans' Court as the forum in which the parties interested to controvert the will shall make their contest, and there is to be but one contest— not actions at law, but one action—founded upon one complaint in the nature of a caveat, to be brought in the tribunal having jurisdiction of the probate, within five years from its date.

In passing the Act of 1856, whereby the probate of a will devising real estate is made conclusive upon all parties unless contested within five years, the legislature evidently looked upon a will controversy as differing essentially from an ordinary dispute arising upon conflicting titles, and the act was designed to mould the controversy so as to make the will effective or ineffective as to real as well as personal estate, so that a man should be adjudged to die testate or intestate, accordingly as his will might be sustained or overthrown in a single contest in that forum to which the law intrusted the probate of every man's will.

The case of Kenyon v. Stewart, 8 Wright 179, is relied on by the plaintiffs' counsel as establishing a different rule, and great stress is laid upon the remarks of WOODWARD, J., as to the purpose of this section. In that case the point was whether the act applied to probates made before its passage. No case has been cited where an ejectment has been sustained in the face of a will duly probated.

The rule deduced from the authorities by the learned plaintiffs in error is, that any proceeding by caveat, or action at law, duly pursued within five years, having for its object the setting aside of a will, destroys the conclusive character of the probate, and leaves unimpaired the right to successive actions of ejectment as it existed prior to October 1st 1856. That this is not the proper construction to be placed upon this section has been determined, we think, by this court, in the cases of Dean v. Bolton, No. 155, October and

November Term 1870, and Little *v.* Owens, No. 119 October and November Term 1873, not reported.

We differ with the learned counsel for the plaintiffs in error respecting the views entertained by the profession at large. The assertion that it is the general understanding since the Act of April 22d 1856, that the heir at law has an unimpaired right to successive actions of ejectment and two concurring verdicts, is incorrect. Dean *v.* Bolton and Little *v.* Owens, already referred to, show the contrary; and in the Robinson Will Case, lately tried before his Honor Judge McKennan in the U. S. Circuit Court, a masterly argument was made by George P. Hamilton, Esq., to prove that since the Act of 1856, the contest in a disputed will case must be carried on in the Orphans' Court, and the rights of all parties are concluded by one trial and judgment. The family difficulty in this case was settled before the court rendered its opinion.

Mr. Justice GORDON delivered the opinion of the court, January 5th 1880.

The plaintiffs, in the ejectment now being tried, claim under Margaret Wilson, one of the heirs at law of Andrew Wilson, who died July 1st 1876, seised of the land in dispute. The defendants, on the other hand, claim as devisees under the will of the said Andrew Wilson. This will was admitted to probate July 7th 1876; from this action of the register an appeal was taken to the Orphans' Court by Margaret Wilson, who thereupon presented her petition to that court praying an issue to the Common Pleas to determine: 1. Whether the alleged testator was, at the time of the execution of the alleged testament, possessed of a disposing mind and memory; 2. Whether he was subjected to undue influence; and 3. Whether he was prevented by the extremity of his last sickness from signing the paper himself, and whether it was properly signed for him. To this petition an answer was filed; an examiner was appointed, and testimony taken. The Orphans' Court, after hearing, refused the prayer for an issue and dismissed the appeal. The case was then carried up to the Supreme Court where the decree was affirmed.

On trial of the ejectment now under consideration, which was brought to March Term 1878, after the defendants had put in evidence the will above mentioned, the plaintiffs offered to prove the same matters proposed in the petition of Margaret Wilson to the Orphans' Court, that is to say, the testator's want of testamentary capacity; the fact of undue influence and the want of a proper execution of the alleged testamentary writing. To this offer the defendants objected, for the reasons following: " 1. That the probate was a judicial act which cannot be impeached collaterally as proposed; 2. That Margaret Wilson having appealed and requested an issue to determine the testator's testamentary capacity,

the charge of undue influence, and the due execution of the will, which appeal was dismissed, &c., the plaintiffs claiming under her are conclusively estopped in this action by virtue of the Act of 22d April 1856; 3. That the evidence is incompetent."

This objection was sustained by the court. The offer was then renewed, with an offer to prove that a caveat had been filed in the register's office giving warning, inter alia, of this action of ejectment. This offer was also overruled and a verdict taken for the defendants.

There is no doubt but that previously to the Act of April 22d 1856, the rejection of these offers would have been erroneous, for before the passage of that act the sentence of the register admitting a will to probate, the decree of the register's court and the verdict of a jury on an issue *devisávit vel non*, were conclusive only as to the disposition of the testator's personal estate. The probate as to realty was but prima facie evidence of the execution of the will and of the testator's testamentary competency: Rowland *v.* Evans, 6 Barr 435. Our task then involves the construction of this Act of 1856. Under this act has the register's sentence of probate the same conclusiveness upon a devise of realty as it has upon a bequest of personalty? Does it now occupy the position of a judicial decree that cannot be impeached collaterally? Or does it remain open to attack as formerly, direct or collateral, for the period of five years, and does the act only operate as a Statute of Limitation which puts an end to all inquiry as to a testamentary devise after the expiration of the statutory period?

The act is badly worded and hence difficult of comprehension. It reads: "That the probate by the register of the proper county of any will devising real estate, shall be conclusive as to such realty, unless, within five years from the date of such probate, those interested to controvert it shall, by caveat and action at law duly pursued, contest the validity of such will as to such realty." The first part of this section is clear and unambiguous; the action of the register "shall be conclusive;" and it shall have all the force of a judicial decree, but the trouble comes with what follows; that is almost unintelligable. There can be no caveat after probate, neither can the official act of the register be affected by an " action at law." Nevertheless, the framer of the statute must surely have meant something by the words, "caveat" and "action at law," and we must determine what he did intend by their use. In order to solve this enigma we must ascertain, if we can, what previous defect in our laws this statute was designed to remedy. As we have already seen, under the Act of 1832 and those which preceded it, the probate of a will as to realty amounted to nothing, if we except its mere prima facie character as evidence; hence, it was open to attack from all quarters and at all times. Any number of suits might be instituted, and in each and every one of them

[Wilson *v.* Gaston.]

the will might be controverted; it might be sustained to-day and overthrown to-morrow. No one could depend absolutely upon a title which involved a will, for no length of time could make such title secure. Here then was an evil, and a very serious one, and one which, we doubt not, the Act of 1856 was intended to remedy. But the question recurs when does this remedy become operative? Say the counsel for the plaintiffs, not until the end of five years, and the dictum of Mr. Justice WOODWARD in Kenyon *v.* Stewart, 8 Wright 179, is cited in support of that allegation, and it is undoubtedly in point, for that learned justice asserts not only that the word "caveat" in the Act of 1856 is inaccurately used, but that the words "actions at law." mean an ejectment or any proceeding where the issue is *devisavit vel non.* We must remember, however, that the case he was considering required no construction of the act, since the only question was whether it applied to wills proved before its passage, and whether as to them it was constitutional. We are, indeed, quite sure that that eminent jurist did not give this question that careful consideration which he would have done had it been the point in that case. He says: "That probate, the foundation of so many titles, we treat as a judicial decree, and the legislature thought there ought to be a time when it should be no longer questionable;" if, however, that probate was treated as a judicial decree, how could it be impeached in a collateral action? Herein is found the inaccuracy of the above statement in that, before the Act of 1856, it was not treated as a judicial decree except as to personal property. Judge Lowrie, in the case of Rowland *v.* Evans, held, that under the Act of 1832, the probate of a will even as to realty must be treated as a judicial decree, and hence, could not be collaterally attacked; but for so holding he was reversed. Mr. Justice BELL, who delivered the opinion of this court, admits that the register is a judicial functionary, and that his decrees, within certain limits, are conclusive until reversed on appeal, and that it does appear somewhat anomalous to ascribe a binding efficacy to one act of probate which is denied to another, or to accord different degrees of stringency to the same probate, nevertheless, the old rule derived from the common law was held to be still in force, because the act did not, in express terms, alter that rule or make the probate as efficacious in devises of realty as in bequests of personalty.

But the Act of 1856 does, in express terms, make the probate of a will devising real estate conclusive as to such realty; not at the end of five years, but unless some one interested shall within five years contest its validity. True it is, if the validity thereof can be contested in any kind of collateral proceeding, involving the will, instituted within that period, the act of the register partakes no more, practically, of the nature of a judicial decree than it ever did, and we may well say that the probate is conclusive

only after the end of the five years.  Thus, instead of having a new power conferred upon the register, and a new efficacy given to his act, we have but a limitation of the time within which the title of the devisee may be attacked.  Yet, clearly, this is not the intention of the act, as appears, not only from the defect in the old law which it was intended to remedy, but from its language.  The probate of the register shall be conclusive "as to such realty;" without more there could not be one particle of doubt as to the meaning of this statute; the doubt only begins when we come to the means prescribed for contesting the will.  The framer of the act knew that it would not do to make the probate absolutely conclusive of the execution of the will; that some time must be given within which to contest that execution, but he evidently was not acquainted with the legal forms necessary to reach that end.  This is evident from the manner in which he has used the word "caveat," and also from the manner in which he has connected it with the words "and action at law."  He evidently regarded a caveat as a means or process for contesting a will, and an action or issue at law as a continuation thereof.  Taking this view of the matter, and it is the only one that can be adopted without the rejection of a word which was evidently deemed material by the framer of the act, and the difficulty is of easy solution.  Thus the caveat will then mean the initiatory process, or notice preceding a contest before the register, and the action at law an issue triable in the Common Pleas, directed by the Orphans' Court, after an appeal thereto from the decree of the register, and this appeal may be taken, in the ordinary form, at any time within five years.  It is true we might substitute "or" for "and," and in this manner make the word "caveat" stand for the whole process before the register and Orphans' Court; and the words "action at law" for any collateral issue involving the validity of the will.  This, however, is a use of these words which is less direct and natural than that we have given; moreover it perpetuates a doctrine always regarded as anomolous, and as antagonizing the rule, now universally recognised, that a judicial judgment or decree may not be collaterally attacked except for fraud.

Judgment affirmed.

Justice MURCUR dissented, as the Act of 1856 is intended as one of limitation only.