Mangold, Appellant, *v.* Neuman.

Argued October 1, 1952. Before STERN, STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*George Papkin* and *Morris Wolf,* with them *Lemuel B. Schofield* and *Wolf, Block, Schorr and Solis-Cohen,* for appellants.

*Earl Jay Gratz,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 10, 1952:

The appeal is from a judgment of a court of common pleas sustaining preliminary objections to a complaint in trespass.

By his will Harry Publicker, decedent, made testamentary provisions for his daughter Helen, his daughter Elva and his son Robert, and for their respective issue. Bequests to his daughter Elva P. Mangold and her issue, *plaintiffs,* were revoked by codicil. The will and the codicils were probated and no appeal has been taken from the register's decree of probate. The plaintiffs, being thus disinherited, instituted an action in trespass against testator's other daughter, Helen P. Neuman, and her husband, Simon S. Neuman, *defendants.* Plaintiffs allege in their complaint that defendants conspired to cause decedent to disinherit plaintiffs; that the husband-defendant occupied a confidential relation toward decedent; that through actions amounting to fraud and undue influence defendants were able to secure decedent's execution of the codicils at a time when decedent, because of illness, was in a weakened physical and mental condition, indicating that decedent did not possess testamentary capacity. Plaintiffs aver that they were damaged "to the extent of the value of [their interest in decedent's estate]". It is stated that such value "cannot be computed exactly at this time" but alleged that such loss is in excess of $7,500,000. Preliminary objections were filed by defendants to the complaint, which were sustained.

The gravamen of the complaint is the allegation that the wrongful action of defendants induced and caused the execution of an *invalid codicil* which caused the disinheritance of plaintiffs to their damage. The damage claimed is the value of the inheritance under the concededly valid will. There is little which we can profitably add to the well considered opinion of President Judge MACNEILLE in the court below. He encompassed the problem when he said: "Under long established principles, it is well settled that the only procedure for attacking the validity of a will or codicil is

by an appeal from probate. If an action is in effect a contest of a will, the proper tribunal for such contest is the orphans' court of the county in which the will was probated. A court of common pleas has no jurisdiction to entertain an action the effect of which is to collaterally attack a will or codicil."

The probate of the will and codicils by the Register of Wills constituted a judicial decree. In *Szmahl's Estate*, 335 Pa. 89, 6 A. 2d 267, Mr. Justice HORACE STERN said, p. 92: " '. . . a register is a judge, and the admission of a will to probate is a judicial act': Sebik's Estate, 300 Pa. 45, 47; West v. Young, 332 Pa. 248, 251."

Such decree is a decree *in rem*. In *Bunce v. Galbrath*, 268 Pa. 389, 112 A. 143, Justice STEWART said (in his opinion adopted by this Court after his death), p. 393: ". . . a decree of probate is in all essentials a judgment in rem, . . . Our own cases recognize and allow the distinction. In Miller's Est., 166 Pa. 97, it is said, 'The proceeding is in the nature of a proceeding in rem and when a final decree is reached it is conclusive upon all the world,' for which the writer of the opinion cites a number of our own cases, such as Ottinger v. Ottinger, 17 S. & R. 142; Folmar's App., 68 Pa. 482; Warfield v. Fox, 53 Pa. 383; Miller's Est., 159 Pa. 562."

An excerpt from the opinion in *Woodruff v. Taylor*, 20 Vt. 65, is quoted which aptly illustrates the basic quality of a decree of probate, p. 394: " 'The probate of the will I conceive to be a familiar instance of a proceeding in rem in this State. The proceeding is, in form and substance, upon the will itself. No process is issued against anyone; but all persons interested in determining the state or condition of the instrument are constructively notified, by a newspaper publication, to appear and contest the probate; and

the judgment is, not that this or that person shall pay a sum of money, or do any particular act, but that the instrument is or is not the will of the testator. It determines the status of the subject-matter of the proceeding. The judgment is upon the thing itself; and when the proper steps required by law are taken the judgment is conclusive and makes the instrument as to all the world (at least so far as the property of the testator within this State is concerned), just what the judgment declares it to be.' "

It is also said, p. 394: "Under all the authorities, the probate of the will adjudicates the status of the estate of the decedent, that the estate has been legally committed to the care and custody of the legally appointed executor, and it legally follows that the will becomes the law governing its distribution." We have since cited *Bunce v. Galbrath,* supra, with approval: *Roberts v. Washington Trust Company,* 313 Pa. 584, 589, 170 A. 291; *Crawford's Estate,* 320 Pa. 444, 446, 182 A. 252. In *Stewart Estate,* 358 Pa. 434, 58 A. 2d 42, Mr. Justice JONES said, p. 437: ". . . the will contest was a proceeding *in rem* undertaken with notice to all interested persons and the decree therein by a court having jurisdiction of the subject-matter was conclusive as against the world of the fact that the alleged will was not a valid instrument. In Miller's Estate, 166 Pa. 97, 110, 31 A. 58, it was said that 'The proceeding [i.e., a will contest] is in the nature of a proceeding in rem, and when a final decree is reached it is conclusive on all the world: [citing cases]'. That statement was later quoted with approval in Bunce v. Galbrath, 268 Pa. 389, 393, 112 A. 143. And so, in Crawford's Estate, 320 Pa. 444, 446, 182 A. 252, '. . . both sides concede[d] that the contest of a will is essentially an action in rem'. All that is needed to make the decree in such a proceeding conclusive

as to everyone is that the jurisdiction of the court rendering it shall have been properly invoked with notice to all interested persons."

The able counsel for appellants in their paper book frankly concede that "the probate was a judgment *in rem*". They argue, however, that there is a fundamental difference between an attack on the *will* which must, under the Register of Wills and Orphans' Court Acts, be in exclusive jurisdiction of the Orphans' Court and an attack on the *conduct of the tortfeasor*. But what the learned counsel overlook is that plaintiffs charge that the alleged wrongful act was the fraudulent procurement and probate of an *invalid codicil* which had the effect of depriving them of testator's bounty under the admittedly valid will. This is in direct impeachment of an unreversed or unannulled judicial decree of the register of wills to the contrary. In the probate proceedings plaintiffs, as heirs at law of testator, were interested parties to the probate and had actual or constructive notice thereof. It therefore follows that the present suit constitutes an obvious collateral impeachment of the decree of probate. It is a rule of law of general application that a judgment properly entered is not subject to collateral attack. In 49 C. J. S. sec. 401, p. 792, the principle is stated, with numerous citations from various jurisdictions, as follows: "A judgment rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment, in respect of its validity, verity, or binding effect, by parties or privies, in any collateral action or proceeding, . . ." This Court has so decided in numerous cases.

In *Commonwealth ex rel. Winpenny v. Bunn,* 71 Pa. 405, 412, we said: "In nothing said herein do we mean to say that the acts of the register are in no case judi-

cial. They are always so, where, without any objections probate has been made of a will, or upon granting letters of administration. There the redress is by appeal. These acts cannot be impeached collaterally."

Chief Justice MOSCHZISKER, in *Sebik's Estate*, 300 Pa. 45, 150 A. 101, said, p. 47: "The orphans' court, in its opinion in support of the order appealed from, well states that 'A register is a judge, and the admission of a will to probate is a judicial decision, [which] can only be set aside on appeal, and is unimpeachable in any other proceeding,' citing Holliday v. Ward, 19 Pa. 485, 489, and Kern's Est., 212 Pa. 57, 61." And in *West v. Young*, 332 Pa. 248, 2 A. 2d 745, Justice LINN said, p. 251: "Granting of letters is a judicial act (Sebik's Estate, 300 Pa. 45, 47, 150 A. 101; McNichol's Estate, 282 Pa. 187, 127 A. 461; Com. v. Gregory, 261 Pa. 106, 104 A. 562; Snyder v. McGill, 265 Pa. 122, 108 A. 410; Zeigler v. Storey, 220 Pa. 471, 69 A. 894; Brown's Estate, 105 Pa. Superior Ct. 236, 161 A. 471) which may not be set aside in a collateral proceeding in the common pleas."

In *Wilson v. Gaston*, 92 Pa. 207, we held that the probate of a will by the register is a judicial decree which cannot be impeached collaterally *in an action in ejectment* brought in the right of the heir-at-law to recover real estate devised by a will. In that case the decision turned upon the construction of the Act of April 22, 1856 P. L. 532, upon which section 16 (a) of the Register of Wills Act of June 7, 1917, P. L. 415, 20 PS 1886, was founded, which in turn became the basis of section 303 (b) of the Register of Wills Act of June 28, 1951, P. L. 638, 20 PS 1840.303. We held that a decree of probate is conclusive both as to *real estate* and personal property. In that case the collateral attack upon the probate was made after a will contest in the orphans' court where the probate was

sustained and after this Court had affirmed the decree. As in the case now before the Court, the plaintiff in the ejectment suit was met by a probated will, which plaintiff claimed was secured through undue influence practiced upon testator lacking testamentary capacity and was invalidly executed. In the case now before us the suit in trespass for damages is founded upon allegation of fraud, undue influence and lack of testamentary capacity, thus collaterally impeaching the register's unappealed decree to the contrary. *Wilson v. Gaston,* supra, which we have never overruled, is identical in principle with the instant case.

There is a well-defined distinction between an attempt to impeach collaterally a judicial decree of probate and a case where the decree of probate is not attacked, but is admitted to be valid, and the testator has been prevented from modifying or revoking the admittedly valid probated document through physical restraint or fraud to the injury of an intended testamentary beneficiary. An illuminating example of such a *restraint or prevention* may be found in comment b to section 870 Restatement, Torts, where the following hypothetical illustration is given: "3. A is desirous of making a will in favor of B and has already prepared but has not signed such a will. Learning of this, C, who is the husband of A's heir, kills A to prevent the execution of the will, thereby depriving B of a legacy which otherwise he would have received. B is entitled to maintain an action against C."

An example of *fraud* is indicated in *Marshall v. DeHaven,* 209 Pa. 187, 58 A. 141. In that action of trespass plaintiff, an heir at law, alleged that testator, by will, had bequeathed his estate to defendant, who had fraudulently influenced testator not to change the will in favor of plaintiff, as testator had expressed his desire to do. Such an injured party obviously would

be without a remedy in a probate court. An action at law for damages against such a tortfeasor would not constitute an impeachment of the decree of probate. (In that case the allegations were held to be insufficiently specific in order to state a valid cause of action). These situations are so legally and logically disparate from the case now before us that they merit no further consideration.

Judgment affirmed.