

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-3-2004

# Golden v. Golden

Precedential or Non-Precedential: Precedential

Docket No. 03-2184

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Golden v. Golden" (2004). *2004 Decisions*. Paper 288.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/288

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-2184

ROBERT GOLDEN, Attorney-in-Fact
for LEAH GOLDEN;
DONALD EARWOOD, Executor of the
Estate of HELEN EARWOOD,

Appellants

v.

DAVID S. GOLDEN;
DARLENE KOPOSKO

On Appeal from the
United States District Court
for the Western District of Pennsylvania
(Dist. Court No. 01-cv-00576)
District Judge:
Honorable David S. Cercone

Argued: January 22, 2004

Before: ALITO and CHERTOFF,
Circuit Judges, and DEBEVOISE,[*]
District Judge

(Filed :September 3, 2004)

JULIA MORROW (Argued)
JOEL W. TODD
Dolchin, Slotkin & Todd
2005 Market Street
24th Floor
Philadelphia, PA 19103

Counsel for Appellants

CHRISTOPHER M. TRETTA (Argued)
Yost & Tretta
1500 John F. Kennedy Boulevard
Two Penn Center Plaza, Suite 610
Philadelphia, PA 19102

JAMES T. DAVIS
MELINDA K. DELLAROSE
Davis & Davis
107 East Main Street
Uniontown, PA 15401

Counsel for Appellees

OPINION OF THE COURT

_____

[*] Honorable Dickinson R. Debevoise, Senior United States District Judge for the District of New Jersey, sitting by designation.

CHERTOFF, <u>Circuit Judge</u>.

Robert Golden, attorney-in-fact for Leah Golden, and Donald Earwood, executor of the estate of Helen Earwood, appeal a final order of the United States District Court for the Western District of Pennsylvania dismissing their action for lack of jurisdiction. Appellants' action sought, through various means, to challenge the distribution of assets from the estate of Irene I. King. In addition to asserting a number of familiar torts, including fraud and slander, the complaint asserted several grounds for relief that relate to probate law, including undue influence and breach of fiduciary duty as the executor of a will. Appellants also sought punitive damages. The District Court dismissed the action as falling within the probate exception to federal diversity jurisdiction. This case, therefore, requires us to explore the contours of the probate exception. We will affirm in part and reverse in part.

Appellant Robert Golden is a citizen of the state of New York and holds general power of attorney for Leah Golden, also a citizen of the state of New York. Appellant Donald Earwood is the personal representative of the estate of Helen Earwood, a citizen of the state of Georgia prior to her death.[1] Appellees

David S. Golden and Darlene Koposko are both adult citizens of the Commonwealth of Pennsylvania.

On September 1, 1999, Irene I. King executed a Last Will and Testament (the "Will") and an *inter vivos* trust (the "Trust"). Pursuant to her testamentary scheme, all of her property was transferred to the Trust, under which she named herself the sole trustee. In the event of her incapacity or death, Appellee David Golden was to become the sole trustee. As a redundancy, her Will also contained a "pour over" provision, transferring all of her property to the Trust upon her death. Under the terms of the original Trust, the Trust corpus was, upon her death, to be distributed in equal one-third shares among Leah Golden, Ms. King's sister-in-law, Helen Earwood, Ms. King's sister, and Appellee David Golden, Ms. King's brother.[2] The original Trust, Will, and other attendant paperwork were prepared by Nicholas J. Cook, Esq., and his office.

As set forth in the complaint, Ms. King's health deteriorated over the months that followed. Concurrently, Appellee David Golden began exercising increasing control over both Ms. King's finances and, allegedly, over Ms. King herself. At some point during the fall of 1999, Appellee David Golden terminated Ms. King's professional home care services in

---

[1]In diversity actions involving estates, the courts look to the citizenship of the decedent to determine jurisdiction. <u>See</u> 28 U.S.C. § 1332(c)(2).

[2] The legacies were contingent upon the legatees surviving Ms. King. In the event that they predeceased, the Trust named contingent beneficiaries.

favor of those provided by Appellee Darlene Koposko and Koposko's mother and daughter. During this time, Appellants allege, several of their attempts to visit Ms. King were either directly rebuffed by Appellee David Golden or met with so much hostility that they were soon terminated.

By June 14, 2000, Ms. King was bedridden, experiencing excruciating pain and unable to maintain bodily functions. She was being medicated for her pain and was prescribed hospice care. That morning, however, she purportedly summoned Appellee Koposko to her side and dictated the preparation of a document altering the distributive scheme enumerated in her Trust. Ms. Koposko then purportedly prepared a handwritten instrument memorializing those changes (the "Addendum"), propped Ms. King up in bed, watched her sign the instrument and then, along with one of Ms. Koposko's long-time friends, witnessed it. Appellee Koposko then allegedly placed the Addendum in a dresser drawer where it remained until June 27, 2000, when she delivered it to the offices of Nicholas Cook.

The Addendum reduced the amount of the legacy granted to Leah Golden from one-third of Ms. King's estate to "the sum of [$5,000]." J.A. at 48. In a similar manner, the Addendum reduced the amount of the legacy granted to Helen Earwood from one-third of Ms. King's estate to "the sum of [$10,000]." Id. The remainder of the estate, according to the Addendum, was to pass to Appellee David Golden.

On July 26, 2000, Ms. King died. On September 19, 2000, Ms. King's Will was probated and letters testamentary thereafter issued. At some point thereafter, Appellee David Golden, through Nicholas Cook, filed a Pennsylvania Inheritance Tax Return (the "tax return") with the Fayette County Register of Wills listing the net value of Ms. King's estate as $188,946.00. Distribution of the legacies has not occurred due to the pendency of the instant litigation.

Appellants brought this action in the United States District Court for the Western District of Pennsylvania on March 28, 2001. Appellants alleged jurisdiction based on diversity of citizenship and an amount in controversy in excess of $75,000. In addition to seeking punitive damages, Appellants asserted six causes of action: (1) undue influence; (2) fraud; (3) forgery; (4) slander (asserted by Appellant Earwood only); (5) tortious interference with inheritance; and (6) breach of fiduciary duty as executor of a will (asserted against Appellee David Golden only). Appellants essentially alleged that their shares under Ms. King's Trust were reduced either as a result of Appellees' outright forgery, or as a result of Appellees' wrongful influence on, or slanderous statements to, Ms. King.

On June 20, 2002, after discovery was complete, the parties filed cross

motions for summary judgment.[3] On November 18, 2002, the District Court conducted a pretrial conference but, on March 23, 2003, *sua sponte* dismissed the action for lack of subject matter jurisdiction. Appellants timely appealed.

Appellees present two arguments against subject matter jurisdiction. First, they claim that Appellants have failed to satisfy the amount in controversy requirement for diversity jurisdiction. See 28 U.S.C. § 1332(a). Second, they urge that Appellants' action falls under the probate exception to federal diversity jurisdiction. See, e.g., Markham v. Allen, 326 U.S. 490 (1946); Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 45 (1909); Moore v. Graybeal, 843 F.2d 706, 709 (3d Cir. 1988). We exercise plenary review over a district court's dismissal for lack of subject matter jurisdiction. See Bakhtriger v. Elwood, 360 F.3d 414, 417 (3d Cir. 2004).

## I.

## A.

Appellees contend that the amount in controversy has not been adequately pled. The amount in controversy is a statutory limit on the subject matter over which the federal courts have jurisdiction. See 28 U.S.C. § 1332(a).[4] As with all issues of subject matter jurisdiction, defects in the pleading of the amount in controversy cannot be waived and, as a consequence, may be raised by any party at any time during litigation of the dispute. See Fed. R. Civ. P. 12(h)(3); see also, e.g., Kontrick v. Ryan, __ U.S. __, 124 S.Ct. 906, 915 (2004). The federal courts themselves, of course, have a continuing obligation to investigate their jurisdiction over the matters before them. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 364 F.3d 102, 104 (3d Cir. 2004) (quoting Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 420 (3d Cir. 2003)); Meritcare Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214, 217 (3d Cir. 1999). Even if no party reaches the issue, therefore, the courts may take the initiative and probe the sufficiency with which the amount in controversy has been pled. See Meritcare, 166 F.3d at 217.

Where a federal cause of action is based on diversity jurisdiction, the complaint must allege an amount in controversy between the parties in excess of the statutory minimum. See 28 U.S.C. § 1332(a). The amount need not be proven; rather, the amount is judged from the face of the complaint and is generally established by a good faith allegation. See Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353 (1961) (measuring "good faith" by whether it appears "to a legal certainty the claim is really for less than the jurisdictional amount") (internal quotations and citations omitted); St. Paul

___

[3] Appellants' motion sought only partial summary judgment on their undue influence, fraud and forgery claims.

[4] At all times during this controversy, the statutory minimum was $75,000. 28 U.S.C. § 1332(a).

Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938); see also Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995). Each plaintiff must meet the amount in controversy requirement—claims may not be aggregated among plaintiffs to meet the statutory minimum. See Meritcare, 166 F.3d at 218 (citing 14B Wright, Miller & Cooper, Federal Practice and Procedure 3d § 3704 at 134 (1994)). On the other hand, courts do not separately evaluate each of the causes of action asserted by any one plaintiff against any one defendant.[5]

_____

[5] The notable exception occurs where recovery on one of the plaintiff's claims excludes recovery for one or more of the others. See Suber v. Chrysler Corp., 104 F.3d 578, 588 (3d Cir. 1997).

In cases where a plaintiff has sued multiple defendants on the theory that they share liability, several circuit courts measure pleading of the amount in controversy under the rubric of "aggregation." See, e.g., Middle Tenn. News Co. v. Charnel of Cincinnati, Inc., 250 F.3d 1077, 1081 (7th Cir. 2001); Jewell v. Grain Dealers Mut. Ins. Co., 290 F.2d 11, 13 (5th Cir. 1961). Thus, a plaintiff is permitted to "aggregate" his or her claims against the multiple defendants to meet the statutory requirement. We have never passed on the issue.

Although we think the "aggregation" approach reaches the correct result, we do not see the question as one of aggregation. Rather, an assertion of joint and several liability is an assertion that

Snyder v. Harris, 394 U.S. 332, 335 (1969); Suber, 104 F.3d at 588 (3d Cir. 1997); see also 14B Wright, Miller & Cooper, Federal Practice and Procedure 3d § 3704 at 134 (1994).

Claims for punitive damages may be aggregated with claims for compensatory damages unless the former are "'patently frivolous and without foundation.'" Packard, 994 F.2d at 1046 (quoting Gray v. Occidental Life Ins. Co., 387 F.2d 935, 936 (3d Cir. 1968)). Punitive damage claims are *per se* "'patently frivolous and without foundation'" if they are unavailable as a matter of state substantive law. See In re Corestates Trust Fee Litig., 39 F.3d 61, 64 (3d Cir. 1994); Packard v. Provident Nat. Bank, 994 F.2d 1039, 1046 (3d Cir. 1993). Where guidance from state substantive law is absent, the federal

_____

*each* defendant is liable for the entire amount, although the plaintiff only recovers the entire amount once. Cf. Michie v. Great Lakes Steel Div., Nat Steel Corp., 495 F.2d 213, 218-19 (6th Cir. 1974). If that amount of liability is above the statutory threshold, jurisdiction has attached. Any other rule would effectively multiply the amount in controversy requirement by the number of defendants alleged to share liability.

Here, all but one of Appellants' causes of action assert that the Appellees are jointly liable. In pleading the amount in controversy, therefore, the Appellants need not have distinguished among the Appellees.

courts must attempt to predict the position that the state courts would take on the question. Corestates, 39 F.3d at 64. If appropriately made, therefore, a request for punitive damages will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum.

### B.

With the foregoing general principles in mind, we turn to the specific allegations of the complaint.

Appellees argue that the compensatory damages at stake fall below the $75,000 threshold. They observe that the tax return filed with the Pennsylvania Orphans' Court lists the estate's net value at $188,946.00. The original Trust provided that Appellants each receive a one-third share of the estate, or $62,982.00. But the amended Trust provided for a distribution of $10,000 to Helen Earwood and $5,000 to Leah Golden. Thus, Appellees argue, Appellant Earwood has alleged an amount in controversy of $52,982.00 and Appellant Golden $57,982.00, each less than the statutory minimum.

Appellants respond that the statutory minimum has been met because the complaint alleged that, but for Appellees' conduct, the value of the estate would have been valued in excess of $250,000.00.[6] But if the filing of the tax return with the Orphans' Court was a determination by that court of the actual value of the estate, then a determination by a federal court that the estate should have been valued higher than $188,946 would constitute an impermissible collateral impeachment of a state court judgment. See Rooker v. Fidelity Trust, Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); see also Exxon, 364 F.3d at 104. Although this Court asked counsel, through supplemental briefing, to clarify how the Orphans' Court treated the tax filing, they were unable to do so.

Nevertheless, the jurisdictional amount in controversy may be satisfied on another basis: the complaint seeks punitive damages. If punitive damages are available under Pennsylvania state law for the causes of action asserted by the Appellants, and if the claims for punitive damages are not otherwise "patently frivolous and without foundation," then the pleadings satisfy the necessary amount in controversy. Packard, 994 F.2d at 1046.

Pennsylvania law permits the recovery of punitive damages for "torts that are committed willfully, maliciously, or so carelessly as to indicate wanton

---

[6] The complaint alleged, for example, that Appellee David Golden had either wasted estate assets prior to Ms. King's death, or failed to report them on the tax return.

6

disregard of the rights of the party injured." Thompson v. Swank, 176 A. 211 (Pa. 1934); see also SHV Coal, Inc. v. Continental Grain Co., 587 A.2d 702, 704 (Pa. 1991). The Pennsylvania Supreme Court has adopted section 908(2) of the Restatement (Second) of Torts, which states that "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to others." Restatement (Second) Torts § 908(2) (1979); see also Feld v. Merriam, 485 A.2d 742, 747-48 (Pa. 1984). The Pennsylvania Supreme Court has also discussed with approval Comment b of that section, which states that "[r]eckless indifference to the rights of others and conscious action in deliberate disregard of them . . . may provide the necessary state of mind to justify punitive damages." Restatement (Second) Torts § 908 cmt. b; see also SHV, 587 A.2d at 704-05; Martin v. Johns-Manville Corp., 494 A.2d 1088, 1096-98 (Pa. 1985), overruled on other grounds by Kirkbride v. Lisbon Contractors, Inc., 555 A.2d 800, 801 (Pa. 1989).

The complaint asserts conduct on the part of Appellees that Appellants allege to be, at least, recklessly tortious. For example, the complaint asserts a cause of action for slander by Appellant Earwood against both Appellees. Pennsylvania permits the recovery of punitive damages for slander claims. See Walder v. Lobel, 488 A.2d 622, 626 (Pa. Super. Ct. 1985) (defamation generally). The complaint also asserts a cause of

action for tortious interference with inheritance by both Appellants against both Appellees.[7] There is no direct pronouncement by the Pennsylvania courts that punitive damages are recoverable in actions for tortious interference with inheritance, but punitive damage awards have been upheld in actions for analogous torts. See, e.g. Judge Tech. Servs., Inc. v. Clancy, 813 A.2d 879, 888-90 (Pa. Super. Ct. 2002) (tortious interference with contractual relations). Given the Pennsylvania Supreme Court's broad pronouncements with respect to the availability of punitive damages, and given the assertion of allegedly intentional or reckless conduct here, we may confidently predict that the Pennsylvania courts would not bar the recovery of punitive damages in this action.[8] Corestates, 39 F.3d at 64. From the face

_____

[7] We note that the Pennsylvania Courts recognize only the tort of intentional interference with inheritance. See Cardenas v. Schober, 783 A.2d 317, 324 n.2 (Pa. Super Ct. 2001). We interpret the complaint to allege that tort. Id. at 325.

Our focus on Appellants' claims for slander and tortious interference with inheritance is deliberate. As will become apparent, infra, they are the only two claims that survive this appeal.

[8] Of course, whether punitive damages are appropriate in this case is a question for the finder of fact. See G.J.D. v. Johnson, 713 A.2d 1127, 1131 (Pa. 1998).

of the complaint, Appellants' punitive damage claim is not "patently frivolous and without foundation." Packard, 994 F.2d at 1046. Thus, at this stage in the litigation, it does not "appear to a legal certainty" the Appellants' claims fall below the statutory minimum. Horton, 367 U.S. at 353 (internal quotations and citations omitted).

Appellants have adequately pled the amount in controversy. We move to the more tangled question presented on appeal: whether the probate exception precludes the federal courts from exercising subject matter jurisdiction over Appellants' substantive causes of action.

## II.

The lineage of the probate exception to federal diversity jurisdiction can be readily traced. As early as 1875, the Supreme Court observed that "a court of equity will not entertain jurisdiction of a bill to set aside a will or the probate thereof," and dismissed the action before it on that basis. In re Broderick's Will, 88 U.S. (21 Wal.) 503, 509 (1875). Later opinions by the Court were more explicit as to the reason: the Judiciary Act of 1789 and its successors granted the federal courts equitable powers coextensive with those held by the English Chancery Court in 1789. See Judiciary Act of 1789, ch. 20, § 11, 1 Stat. 78; Markham, 326 U.S. at 494; Canal-Louisiana, 215 U.S. at 43. Because probate matters in late eighteenth century England were assigned to the ecclesiastical court and not to the Chancery Court, the federal courts are without the power to probate a will or administer an estate.[9] Markham, 326 U.S. at 494; Canal-Louisiana, 215 U.S. at 43; see also Georges v. Glick, 856 F.2d 971, 973 (7th Cir. 1988); Rice v. Rice Found., 610 F.2d 471, 475 (7th Cir. 1979).

The probate exception extends both to matters of "pure" probate and to matters "ancillary" to probate. See Farrell v. O'Brien, 199 U.S. 89, 110 (1905); see also Dragan v. Miller, 679 F.2d 712, 715 (7th Cir. 1982), cert. denied, 459 U.S. 1017 (1982); Rice, 610 F.2d at 475. On the other hand, strictly *in personam* actions whose subject matter relates only incidentally to probate can be maintained in federal court because the exercise of jurisdiction under such circumstances would not "interfere with the probate proceedings or [require the court to] assume general jurisdiction of the probate or control of the property in the custody of the state court." Markham, 326 U.S. at 494.

_____

[9] Although the Supreme Court's reasoning in Markham and Canal-Louisiana was directed to the equitable power of the federal courts, the same result occurs where the complaint seeks legal relief. The power of the federal courts to grant legal relief was limited by the Judiciary Act of 1789 to be coextensive with the English common-law courts. Like the Chancery Court, the common-law courts did not consider probate matters. Cf. Markham, 326 U.S. at 494; Rice v. Rice Found., 610 F.2d 471, 475 (7th Cir. 1979).

Where is the line of demarcation? Various descriptions of the probate exception over the years often seem to substitute one opaque verbal formulation for another. See Markham, 326 U.S. at 494; Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 466-67 (1939); Canal-Louisiana, 215 U.S. at 46; Farrell, 199 U.S. at 110; Dragan, 679 F.2d at 715; Lamberg v. Callahan, 455 F.2d 1216, 1216 (2d Cir. 1972). But however one articulates the precise contours of the probate exception, three principles discernable from caselaw are enough to guide our disposition of this appeal.

First, the federal courts lack the power to actually probate a will. See Markham, 326 U.S. at 494; Moore, 843 F.2d at 709; see also Georges, 856 F.2d at 973. Second, where a will has already been probated, permitting an action that seeks, expressly or in fact, to assail or contradict a judgment of the probate court generally constitutes an impermissible interference with the probate.[10] See

Moore, 843 F.2d at 710. Likewise, the probate exception bars federal courts from adjudicating claims that challenge management of the estate. Cf. Princess Lida, 305 U.S. at 459, 465-67 (treating a claim of trustee mismanagement as related for jurisdictional purposes to administration of the corpus). Third, federal courts may nevertheless exercise jurisdiction over an otherwise barred probate-related cause of action if the action would be maintainable *inter partes* in the state courts of general jurisdiction.[11]

Sutton v. English, 246 U.S. 199, 205

---

Desi's Pizza, 321 F.3d at 419. A rule, like the one announced in Moore, prohibiting federal court review of claims seeking to annul or set aside an already-probated will is entirely consonant with the Rooker-Feldman doctrine, and comports with the federalism and comity concerns that the doctrine embodies. See Moore, 843 F.2d at 710.

[11] This rule even applies where the will has already been probated and a judgment favorable to the plaintiff might annul or set aside the will (i.e., collaterally impeach the probate). But this rule is strictly construed. It is not enough that the cause of action be recognized; the state courts must also recognize and sanction the use of that cause of action to collaterally impeach a probate. As we observed in Moore, it is in this way that state substantive law can "expan[d] the power of a federal courts to hear matters related to but independent of probate proceedings." 843 F.2d at 709.

---

[10] This view of the interference prong is fortified by other considerations. Federal courts, with the exception of the Supreme Court, cannot "sit[] in direct review of the decisions of a state tribunal." Gulla v. North Strabane Twp., 146 F.3d 168, 171 (3d. Cir. 1998) (citing Feldman, 460 U.S. at 482; Rooker, 263 U.S. at 416). This rule, known as the Rooker-Feldman doctrine, prohibits federal courts from considering any claim "inextricably intertwined" with a state court adjudication. See Exxon, 364 F.3d at 104;

(1918); Farrell, 199 U.S. at 110-11; see also Moore, 843 F.2d at 709. This supplemental rule means that a state can effectively contract the scope of the probate exception if it allows its courts of general jurisdiction to adjudicate challenges to probate.

In sum, federal courts have the power to entertain *in personam* diversity actions, firmly grounded in recognized legal theories, if their resolution will not undercut the past probate of a will or result in the federal court "assum[ing] general jurisdiction of the probate or control of the property in the custody of the state court." Markham, 326 U.S. at 494. Where relief can be granted without challenging the probate court's determinations or management of the *res*, the exercise of federal jurisdiction could not "interfere with the probate." And, in any event, if the actions would be maintainable *inter partes* in the state courts of general jurisdiction, the state has presumably determined as a matter of law that such actions will not disrupt the activities of the state probate courts.

## A.

The parties acknowledge, as they must, the foregoing threshold principles. From that point of departure, however, they proceed down different analytical paths.

Appellants contend that the probate exception is categorically inapplicable to this case. They argue that the probate exception by its terms applies only to a will, and not to a trust—even if, as here, the trust operates as a will, distributing corpus upon the death of the settlor. They point out that trusts, by definition, do not pass through probate. That being so, they argue, actions involving trusts should *per se* not be subject to the probate exception.

This mistakes the scope of the probate exception, which is not limited to the formal act of probating a will. As described previously, the probate exception bars a federal court from entertaining both matters of "pure" probate and matters "ancillary" to probate. Farrell, 199 U.S. at 110; Moore, 843 F.2d at 709; see also Dragan, 679 F.2d at 715; Rice, 610 F.2d at 475. Accordingly, the Seventh Circuit has rejected a *per se* rule identical to the one proposed by the Appellants here. See Storm v. Storm, 328 F.3d 941, 944-45 (7th Cir. 2003); see also Georges, 856 F.2d at 974 n. 2. In Georges, the Seventh Circuit noted that analysis of the probate exception applies as well to trusts that act as "will substitutes":

> The plaintiffs argue that the probate exception is inapplicable here because this action relates to the execution of an inter vivos trust, not to a will. We reject such a *per se* rule. The inter vivos trust is clearly a will substitute. However, the fact that this case does involve a will substitute does not automatically render the probate exception

10

applicable.

856 F.2d at 974 n.2.

The probate exception protects the state's interest in managing *all* challenges addressing an estate res located in that state or with which the state has some meaningful connection. That interest is no less compelling if the estate res is distributed by trust rather than by a will. We agree with the Court of Appeals for the Seventh Circuit in holding that causes of action involving trusts are treated under the probate exception in the same way as actions involving wills.

Appellees take the opposite categorical position, and contend that the probate exception applies categorically to all claims here. They argue that, because the Pennsylvania legislature has transferred to the Orphans' Court the power to administer and oversee actions seeking to reform trusts, see 20 Pa. C.S.A. § 711(3),[12] the probate exception must *per*

se apply to preempt this action. Of course, we have already observed that the state can shrink the probate exception by assigning probate related claims to a state court of general jurisdiction. But the reverse does not follow. A state cannot expand the probate exception—and defeat otherwise proper federal jurisdiction over a matter—simply by vesting exclusive authority over otherwise *in personam* actions in the probate court. See Canal-Louisiana, 215 U.S. at 43-44; Payne v. Hook, 74 U.S. (7 Wal.) 415, 429-30 (1869); see also 17 Wright, Miller & Cooper, Federal Practice and Procedure 3d § 4211, at 475 (1988). That is to say, if a claim is otherwise outside the scope of the probate exception, a federal court is not divested of jurisdiction simply because the state places that sort of claim in state probate court. See Marshall v. Lauriault, 372 F.3d 175, 181 (3d Cir. 2004).

Accordingly, we reject the categorical argument of each party. Instead, we must examine the substance of each of the claims to determine whether it falls within the probate exception.

### B.

We first turn to the claims of undue influence, forgery and breach of fiduciary duty as an executor.

Once a will has been probated, it generally constitutes an impermissible interference with the probate for a federal court to entertain a cause of action that seeks, in fact or in effect, to attack a determination of the probate court.

---

[12] In relevant part, 20 Pa. C.S.A. § 711 states:

> [J]urisdiction of the court of common pleas over the following shall be exercised through its orphans' court division:
>
> (3) The administration and distribution of the real and personal property of inter vivos trusts, and the reformation or setting aside of any such trusts . . . .

11

We take a fairly broad view of the types of actions that interfere with the probate proceedings. Moore, 843 F.2d at 710. Under that broad view, we must conclude that Appellants' claims for undue influence, forgery and breach of fiduciary duty as an executor would interfere with the already-completed probate proceedings and, therefore, are subject to the probate exception.

In Moore, this Court upheld the district court's dismissal under the probate exception of an action seeking to establish rights in an estate that had already been probated. 843 F.2d at 710. Moore, a legatee under an earlier, revoked will, sought a declaration that the will probated by the Delaware probate court was invalid as a result of either undue influence or lack of testamentary capacity. See id. at 707. We held that Moore's action was barred by the probate exception because it would interfere with the Delaware courts' past probate of the estate by partially reversing the bequests. See id. at 710. In other words, a judgment favorable to Moore would necessarily adjudicate a matter normally determined as a part of probate. "[W]e are satisfied that jurisdiction cannot be sustained on the theory that this is an action by a legatee which does not interfere with the probate proceedings." Id. We noted that the result did not change simply because Moore cast her action to recover damages rather than to reform the will.

> Regardless of how Moore characterizes her claim, she is seeking in substance to invalidate the will . . . . We are not impressed with the concept that granting her relief would not interfere with the probate proceedings if done by an award of damages rather than by an order to the executor directing distribution of the estate. Either way the substance is the same.

Id. (internal citations omitted). Under Moore, therefore, actions that seek in effect to reform a will or overturn a determination of will validity by the probate court constitute an impermissible interference with the probate.

Here, the practical effect of each of Appellants' claims for undue influence and forgery would do exactly that: declare the Addendum and its distributive scheme invalid or unenforceable. To be sure, the Register of Wills and the Orphans' Court never directly passed on the Trust or its Addendum. But the Register of Wills did probate Ms. King's Will which, in turn, passed all of her property "under the terms of [her] trust agreement . . . and any amendments thereto." J.A. at 38. As we see it, therefore, by probating Ms. King's Will, the Register also implicitly determined the Trust, the Addendum and their combined distributive scheme to be valid and enforceable.[13] Appellants'

_____

[13] The Register of Wills is a judicial officer under Pennsylvania law, subject to

12

claims for undue influence and forgery would strike at that determination of validity, however. For a will that is the result of undue influence or that is forged is necessarily invalid. See 20 Pa. C.S.A. § 2502; In re Fleming's Estate, 109 A. 265, 267-68 (Pa. 1919);[14] In re Carothers Estate, 150 A. 585, 586 (Pa. 1930). An implicit federal court judgment that the Addendum is invalid or unenforceable would be inconsistent with the Orphans' Court's probate jurisdiction over Ms. King's estate. As the Seventh Circuit has observed, application of the probate exception depends not on how the federal claim is labeled, but on whether the action is "in effect one to declare [the] . . . will invalid because of undue influence." Dragan, 679 F.2d at 717.

Appellants' claim for breach of fiduciary duty as the executor of a will is also at odds with the probate jurisdiction of the Orphans' Court. Based on the complaint, the primary theory of Appellants' breach of fiduciary duty claim

is that Appellee David Golden misappropriated or wasted estate assets prior to probate. See In re Lux's Estate, 389 A.2d 1053, 1055 (Pa. 1978). The complaint also arguably raises the theory that Appellee David Golden breached his duty as the executor of Ms. King's estate by operating under a conflict of interest. These claims strike at management of the estate, and the District Court is nonetheless without jurisdiction to adjudicate it. In Pennsylvania, all claims that an estate's executor engaged in self-dealing are handled in the probate court, either by removal of the offending executor, see 20 Pa. C.S.A. § 3182, or by assessing a penalty against that executor. See In re Estate of Harrison, 745 A.2d 676, 679 (Pa. Super. Ct. 2000). Claims for breach of fiduciary duty as executor of an estate are never adjudicated outside the probate context. Appellants' breach of fiduciary duty claim—indeed, under either theory—is, therefore, a classic example of a claim that is so "ancillary" to probate that it is not justiciable in federal court. See Farrell, 199 U.S. at 110. That is because, as the Supreme Court observed in Princess Lida, claims of mismanagement of an estate relate "solely as to administration and restoration of corpus." 305 U.S. at 281; see also Mangieri v. Mangieri, 226 F.3d 1, 3 (1st Cir. 2000) (holding probate exception excludes claim that fiduciary should refund money to the estate).

Moreover, these theories of recovery do not come within any state law *inter partes* exemption from the probate

---

appellate review by the Orphans' Court. See Mangold v. Neuman, 91 A.2d 904, 905-06 (Pa. 1952).

[14] The Pennsylvania Statute of Wills, 20 Pa. C.S.A. § 2502, provides, in relevant part, that "[e]very will shall be in writing and shall be signed by the testator at the end thereof." In short, if the signature on a testamentary document is forged, that document must be invalid as it was never validly executed. See Fleming's Estate, 109 A. at 267-68.

exception. Pennsylvania law does not vest in the Pennsylvania courts of general jurisdiction any power to establish rights in an estate on the theories of undue influence, forgery or breach of fiduciary duty as an executor. Indeed, at least with respect to undue influence, authority is directly to the contrary. See Lucidore v. Novak, 570 A.2d 93, 94-95 (Pa. Super. Ct. 1990). In Lucidore, the plaintiffs attempted to sue, in the Court of Common Pleas, the executrix and the attorney of the estate of their deceased aunt. Id. at 94. At the time of the suit, the deceased's will had already been probated by the Orphans' Court and Letters Testamentary had issued. Id. The complaint alleged that the defendants had exercised undue influence over the deceased, and sought an injunction against disposition of assets from the estate on the ground that "the will was obtained as a result of the undue influence." Id.

The Court of Common Pleas dismissed the case for lack of jurisdiction and the Pennsylvania Superior Court affirmed, saying that undue influence claims fell exclusively within the ambit of the probate court:

> [T]here is no doubt that the appellants incorrectly captioned the nature of their action as a complaint in equity in that this action must be an appeal from probate. Further, there is no doubt that appellants brought the action in the incorrect division of the court of common pleas. . . .
>
> Case law confirms that an action contesting the validity of a will on grounds of lack of testamentary capacity, undue influence, and confidential relationship must be brought as an appeal from probate in the orphans' court division of the court of common pleas . . . . [I]t is incorrect to file a complaint in the civil division seeking to set aside the will.

Id. at 94-95.

We are persuaded, therefore, that the Pennsylvania courts do not recognize undue influence as a tort existing outside the probate context. Further, no Pennsylvania case permits a suit, in the state courts of general jurisdiction to sue for forgery of a will or breach of fiduciary duty as executor of an estate. These theories of recovery also contest the validity of the will, and must be addressed "as an appeal from probate." Id. at 95.

C.

Appellants' claim for the tort of fraud presents a somewhat closer question. Fraud is a well-established tort in Pennsylvania. See, e.g., Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994). And if the Appellants were pressing a theory of fraud that did not in any way challenge the Orphans' Court's probate of Ms. King's

14

estate, the District Court might well have jurisdiction over those claims. But as it stands, both of the fraud theories that the complaint might conceivably support entail a direct challenge to determinations of the Orphans' Court.

From the complaint, the Appellants could argue two possible theories of fraud. First, that the Appellees forged the Addendum and Ms. King's signature on it and thereby defrauded the Orphans' Court and robbed the Appellants of their inheritance. See, e.g., In re Fleming's Estate, 109 A. at 267-68. Second, that the Appellees fraudulently induced Ms. King into signing the Addendum by making her believe that it said something other than what it actually said, and thereby deprived the Appellants of their inheritance. See, e.g., In re Estate of Glover, 669 A.2d 1011, 1016-17 (Pa. Super. Ct. 1996).

Under either theory, the Addendum—which the Orphans' Court implicitly found to be valid and enforceable—is either invalid or unenforceable. If Appellants' first possible fraud theory is correct and the Addendum and Ms. King's signature on it were forged, the documents are obviously invalid as a forgery. See 20 Pa. C.S.A. § 2502; In re Fleming's Estate, 109 A. at 267-68. We have already explained why such a theory falls within the probate exception. And if the Appellants's second theory is correct, the Addendum is either invalid or unenforceable because Mrs. King was misled about what she was signing and, therefore, the document does not reflect Ms. King's testamentary

intent.[15] See In re Glover's Estate, 669 A.2d at 1016-17. In that case as well, Appellants' theories are inimical to the determinations of the Orphans' Court that the Will, the Trust, the Addendum and their combined distributive scheme are both valid and enforceable.

Since the Appellants' fraud claims effectively seek to challenge the Orphans' Court's probate of Ms. King's estate, we must go on to ask: Would Pennsylvania allow a court of general jurisdiction to entertain such a fraud claim anyway? To be sure, fraud may be a recognized tort in Pennsylvania. But we are not aware that any court in Pennsylvania has permitted a plaintiff to seek to challenge the past probate of an estate through the vehicle of a fraud action. As we have observed, it is not enough under the *inter partes* exemption from the probate exception for a state court to recognize a cause of action; rather, the state court must recognize the *use* of that action to impeach a probate. Any other rule would reward creative pleading and would undermine both the fundamental assumptions of the "*inter partes*" exemption from the probate exception and the finality that the probate system requires. See Moore, 843 F.2d at

_____

[15] Pennsylvania law is not clear whether a will whose execution was the result of fraud and misrepresentation—though technically meeting all statutory requirements—is invalid or is simply unenforceable. See In re Paul's Estate, 180 A.2d 254, 261-62 (Pa. 1955); Glover, 669 A.2d at 1016-17.

710; see also Storm, 328 F.3d at 945. Thus, Appellants' fraud claims must be dismissed—as with their claims for undue influence, forgery and breach of fiduciary duty as executor of a will—because recovery on those claims would not be otherwise maintainable in the Pennsylvania courts of general jurisdiction, would be contrary to a determination of the probate court, and would impermissibly "interfere with the probate proceedings." Markham, 326 U.S. at 494; Moore, 843 F.2d at 710.

D.

As already noted, federal courts retain the power to entertain *in personam* diversity actions involving parties to a will if the resolution of the action will have no effect on the past probate of a will. The first of Appellants' causes of action that is saved by this principle is Appellant Earwood's claim for slander.

A claim for slander is a strictly *in personam* action. It is, in this case, also firmly based on a recognized legal theory—the Pennsylvania courts have long recognized the tort of slander. See, e.g., Klumph v. Dunn, 66 Pa. 141 (Pa. 1870); Chubb v. Gsell, 34 Pa. 114 (Pa. 1859); see also Corabi v. Curtis Pub. Co., 273 A.2d 899, 908 (Pa. 1971). Moreover, even assuming that slander is proven, relief can be granted without challenging the Orphans' Court's determinations of estate value and testamentary document validity, enforceability and distributive scheme. That is to say, a determination by the District Court that Earwood may have

been slandered and damaged by the Appellees is in no way contrary to the Orphans' Court's determination that the Will, the Trust, the Addendum and their combined distributive scheme are valid and enforceable. To be sure, the amount of Earwood's damage as a result of the alleged slander might—though it need not—be *measured by* the difference between the legacy under the Addendum and the legacy under the Trust. But a judgment that the Appellees slandered Earwood and caused her some amount of damage does nothing to impeach the Orphans' Court's determination that Ms. King intended to and succeeded in distributing her estate via the scheme laid out in the Trust and its Addendum. The District Court has jurisdiction to consider Appellant Earwood's claim for slander.

So, too, is there jurisdiction over Appellants' claims for tortious interference with inheritance. Despite its entwinement with probate, a cause of action for tortious interference with inheritance is one brought *in personam*. It is no different from any other tort—the plaintiff is asserting that some tortious action on the part of the defendant has caused him or her damage. Further, though it may not be so in other states,[16] a claim for tortious interference with inheritance is one based on a legal theory

---

[16] In Moore, for example, we concluded that the Delaware state courts would not permit a plaintiff to bring an action for tortious interference with inheritance. 843 F.2d at 710-11.

16

recognized by the Pennsylvania state courts. See Mangold, 91 A.2d at 907; Cardenas, 783 A.2d at 325-26.

Further, relief can be granted without challenging the Orphans' Court's determinations of estate value and testamentary document validity, enforceability and distributive scheme. In Pennsylvania, the elements of tortious interference with inheritance are:

> (1) The testator indicated an intent to change his will to provide a described benefit for plaintiff,

> (2) The defendant used fraud, misrepresentation or undue influence to prevent execution of the intended will,

> (3) The defendant was successful in preventing the execution of a new will; and

> (4) But for the Defendant's [sic] conduct, the testator would have changed his will.

Cardenas, 783 A.2d at 326. In no event does an action for tortious interference with inheritance in Pennsylvania challenge the Orphans' Court's determination of value of the estate. Cf. Mangold, 91 A.2d at 907. Nor may a plaintiff use an action for tortious interference with inheritance to challenge the validity or enforceability of the testamentary documents (if any) admitted to probate, or the testamentary scheme established by those documents.

Cf. id.

True, any cause of action for tortious interference of inheritance brought in Pennsylvania implicitly contends that the testator's intent was, at some point in time, something other than what the Orphans' Court found it to be at the testator's death. Indeed, one of the elements of tortious interference with inheritance in Pennsylvania is that the testator intended to make a distribution to the plaintiff but was prevented from doing so by the defendant. The tort claim, therefore, does posit that the distributive scheme that the Orphans' Court found to be in place at the time of the testator's death is different from the one the testator at some point intended.

But this is not the same as a challenge to the *validity*, *enforceability* or *interpretation* of a testamentary document passed on by the Orphans' Court. Id. To the contrary. The theory of the tort is that the will actually probated was valid and enforceable because it reflected testamentary intent *at the time it was made*, but that the alleged tortfeasor wrongly induced the testator to maintain that will. Whatever the outcome of an action for tortious interference with inheritance, the Orphans' Court's determinations of testamentary document validity, enforceability and interpretation will, as they must, remain unaffected. Id.

An example will help to clarify the point. Take a hypothetical testator who adopts a valid testamentary distributive scheme that does not provide for person P.

17

At some point, Testator contemplates changing the testamentary distributive scheme to add a legacy for P, but person D somehow intentionally prevents the change. Thus, at the time of Testator's death, the only scheme providing for the distribution of Testator's assets is the earlier—and valid—scheme leaving nothing to P.

The original testamentary scheme was a true and correct expression of Testator's then-intent. Because Testator never revoked or superseded the earlier testamentary scheme, that scheme remained valid, and the Orphans' Court was required to probate it. Independent of the validity and enforceability of Testator's earlier scheme, D harmed P, because, but for D's actions, Testator would have amended the testamentary scheme and P would have received a legacy. If P sues D for tortious interference, that suit does *not* impeach the validity or enforceability of the original will. To the contrary, it *relies* on that validity to support the claim that D damaged P by preventing the testamentary scheme from being changed. Cf. Georges, 856 F.2d at 974 (finding jurisdiction over a claim for legal malpractice in preparation of a trust because the claim "does not seek to disturb the finality of the . . . probate proceedings").

Under Mangold and Cardenas, P may sue D in the Pennsylvania courts of general jurisdiction for tortious interference with inheritance. Mangold, 91 A.2d at 907; Cardenas, 783 A.2d at 325-26. Put simply, in Pennsylvania, the elements of tortious interference with inheritance do not call into question the probate court's determination of testamentary document validity or enforceability.[17] The probate of a will, therefore, does not prevent a party from bringing an action for tortious interference with inheritance in the Pennsylvania courts of general jurisdiction.

To be sure, while an action for tortious interference with inheritance does not challenge the validity or enforceability of the distributive scheme affirmed by the probate court, recovery on that theory may, *de facto*, alter the distributive scheme. It was this consideration that gave us pause in Moore. 843 F.2d at 710. There, we affirmed the dismissal of the plaintiff/appellant's claim for tortious interference with inheritance because such an action would be "so inconsistent with the Delaware statutory plan for exclusive review of probate proceedings that allowing it would subvert the probate law." Id. Central to our reasoning,

_____

[17] Indeed, this is one of the key, outcome-determinative distinctions between Appellants' fraud claims and their tortious interference with inheritance claims. Recovery on Appellants' fraud claims would require the District Court to directly contradict the Orphans' Court's determination that the Will, the Trust, the Addendum and their combined distributive scheme are valid and enforceable. Appellants' tortious interference with inheritance claims, by contrast, require no such contradiction.

18

however, was the fact that the Delaware courts did not unambiguously permit tortious interference with inheritance claims in the courts of general jurisdiction. Id. at 710 & n.4. That being so, it was not the province of the federal courts to entertain actions whose *de facto* effect would be to re-allocate estate assets post-probate.

But unlike in Moore, the state courts in this case *do* unambiguously recognize the viability, outside the probate context, of claims for tortious interference with inheritance. State law, therefore, compels a different result in this case. Pennsylvania law permits actions for tortious interference with inheritance in the courts of general jurisdiction and a federal court must adjudicate such claims just as they would any other tort claim brought pursuant to our diversity jurisdiction.[18]

---

[18] State law also compels the difference between our result and the Seventh Circuit's holding in Storm. 328 F.3d at 945. Storm was strongly guided by the fact that the plaintiff/appellant failed to meet a state law jurisdictional prerequisite for his tortious interference with inheritance claim.

> [Tortious] interference with inheritance is a recognized tort in Indiana; such an action may be brought in a court of general jurisdiction, *provided a will contest is unavailable to supply an adequate remedy*.

The District Court has jurisdiction to consider Appellants' claims for slander and tortious interference with inheritance. Of course, we take no position as to whether the Appellants have alleged sufficient facts to meet the elements of those torts as the Pennsylvania courts have defined them. That inquiry is for the District Court.[19]

---

Id. (emphasis added, citations omitted). Even though "Indiana law would require [his] tort claim be heard in the probate [court]," plaintiff/appellant Storm sued in federal court rather than wait for the will to be admitted to probate. Id. at 945. Storm failed, therefore, to meet the state law jurisdictional prerequisite that "a will contest [be] unavailable to supply an adequate remedy." That being so, the Indiana courts of general jurisdiction— and, by extension, the federal courts—could not entertain Storm's action for tortious interference with inheritance. Id. at 945-946. The Seventh Circuit dismissed the claim, calling the action "in substance a will contest." Id. at 945.

By contrast, the Pennsylvania courts contemplate no such jurisdictional prerequisite to bringing a claim for tortious interference with inheritance. The concerns that guided the result in Storm, therefore, are not present here.

[19] For example, in resolving the still-undecided cross motions for summary judgment as they apply to Appellants' claims for tortious interference with inheritance, the District Court will have to determine whether the facts as alleged

### III.

For the foregoing reasons, the judgment of the District Court will be affirmed in part and reversed in part and the case will be remanded for further proceedings in accordance with this opinion.

---

establish that Ms. King intended to change her will to benefit the Appellants and that she would have succeeded in doing so but for the Appellees' actions.